# EXHIBIT "B"

# EVERCORE PARTNERS

CIARA A. BURNHAM

October 26, 2005

Davis Petroleum Corp.
1360 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Attention: Daniel Armel

Re:  Exclusivity; Reimbursement of Fees; and Break-Up Fee

Ladies and Gentlemen:

In connection with discussions between Evercore Advisors L.P. ("Evercore") and Davis Petroleum Corp. and its related entities (collectively, the "Company") regarding a possible transaction with the Company, the parties hereto agree as follows:

1. **Confidentiality Agreement; Summary of Terms**

Each of Evercore and the Company acknowledges that the confidentiality agreement dated as of January 19, 2005 between them (the "Confidentiality Agreement") remains in full force and effect. The Company also acknowledges that it has received from Evercore a proposal letter dated as of October 21, 2005, together with a Summary of Proposed Terms attached to the proposal letter (together the "Evercore Proposal"). A copy of the Evercore Proposal as attached to this Agreement as Exhibit A. A transaction substantially on the terms set forth in the Evercore Proposal is referred to as the "Transaction."

2. **No Solicitation**

In consideration of Evercore's agreement to complete its due diligence review and negotiate in good faith the terms of a definitive agreement with respect to the Transaction, the Company agrees for the duration of the Non-Solicitation Period (as defined below), that (i) it will not, and it will cause Davis Offshore Management LLC, Davis Offshore Holding LLC and Davis Pipeline LLC (collectively, the "DP Affiliates") and the directors, officers, employees, representatives (including, without limitation, financial advisors, attorneys and accountants) and agents of the Company and the DP Affiliates (collectively, the "Davis Parties") not to, encourage, solicit, initiate or enter into any discussions, negotiations, arrangements, understandings or agreements (whether written or oral) with, or provide any information to, any corporation, partnership, limited liability company, association, person or any other entity or group with respect to any transaction similar in purpose or effect to, that could be preclusive or that could have the effect of limiting the scope of, the Transaction (an "Alternative Transaction"); (ii) it will immediately cease and cause to be terminated any existing activities, discussions or negotiations with any parties conducted heretofore by any person with respect to any Alternative Transaction; and (iii) it will notify Evercore immediately in writing if any inquiries or proposals (including the identity of the party making such inquiry or proposal and the terms thereof) are received by, any such information is requested from, or any such negotiations or discussions are sought to be initiated or continued with it with respect to any

EVERCORE PARTNERS  55 EAST 52ND STREET  NEW YORK, NY 10055  TEL: 212.857.3160  FAX: 212.857.3132  E-MAIL: burnham@evercore.com

Exhibit "B"

Alternative Transaction. "Non-Solicitation Period" means the period ending at the close of business on the 70th day after the Company's execution of this Agreement.

3. **Reimbursement of Expenses**

If

(a) prior to the end of the Non-Solicitation Period, the Company's and the DP Affiliates' respective equityholders have not approved a Transaction with Evercore on terms that are not materially less advantageous to the Company's stockholders than those set forth in the Evercore Proposal, or

(b) at the end of the Non-Solicitation Period, litigation is pending or threatened in writing against the Company, Evercore, the DP Affiliates or any of their respective properties or assets that challenges the Transaction or that could have a material adverse effect on the business, financial condition or results of operations of the Company or the DP Affiliates,

then the Company shall promptly reimburse Evercore for its reasonable out-of-pocket third-party fees and expenses incurred in connection with Evercore's consideration of and participation in the Transaction; *provided, however,* that all such fees and expenses incurred by or on behalf of Evercore that shall be payable, directly or indirectly, by the Company or any of the DP Affiliates in connection with the Transaction (whether or not consummated) shall in no event exceed $1,500,000. For purposes of Section 3(b), if litigation is pending but unconditional releases have been executed by each plaintiff in favor of the Company, the DP Affiliates and Evercore, then that litigation will not be deemed to be pending or threatened.

4. **Break-Up Fee**

If, prior the expiration of one year after the date hereof, the Company, any DP Affiliate or any of their respective equityholders enters into an agreement for, or consummates, a transaction that, if entered into or consummated during the Non-Solicitation Period would have been an Alternative Transaction, then the Company shall pay Evercore a break-up fee equal to (a) $5 million less (b) the amount, if any, of any expense reimbursements that have been actually received by Evercore prior to such date pursuant to Section 4 hereof; *provided, however,* that no such break-up fee will be payable if Evercore withdraws the Evercore Proposal (or submits a replacement proposal materially less advantageous to the Company's stockholders) prior to the end of the Non-Solicitation.

5. **Payments**

Any payments required under Section 3 or Section 4 shall be made within three business days of the occurrence of the event giving rise to the obligation to pay such amounts. Any such payments shall be made by wire transfer of immediately available funds to an account or accounts designated by Evercore.

6. **Miscellaneous**

This Agreement shall be governed by, and construed in accordance with, the internal laws, and not the laws of conflicts or choice of law, of the State of California.

The Company acknowledges that in order to facilitate the implementation of the Transaction, Evercore must begin to finalize the capital structure of the acquisition vehicle. In that regard, the Evercore Proposal provides that stockholders of the Company (other than the Gregg J. Davis Trust) may elect to either (i) sell their equity interests for cash or (ii) convert those equity interests into shares of the new operating company. The Company acknowledges that any stockholder of the Company that desires to convert into the equity of the new operating company must notify Evercore of its intention to do so within 30 days after the date hereof. Otherwise, any stockholder will be deemed to have elected to sell its equity interests for cash. Any conversion of equity would occur at the time of the closing of the transaction.

Other than as specifically set forth herein, unless and until a written definitive agreement concerning the Transaction has been executed, neither the Company nor any of the DP Affiliates will have any liability to Evercore, and Evercore will not have any liability to the Company, with respect to the Transaction, whether by virtue of this letter agreement, any other written or oral expression with respect to the Transaction or otherwise. By executing this Agreement, the Company and Evercore confirm that, except as specifically set forth herein, any agreement between the Company and Evercore concerning the Transaction will exist only when such agreement is in writing and duly executed by the parties thereto.

This letter agreement and the Confidentiality Agreement contain the entire agreement between Evercore and the Company with respect to the subject matter set forth herein and therein, and no modifications of this letter agreement or waiver of the terms and conditions hereof will be binding upon Evercore or the Company unless executed in writing by all parties.

Kindly confirm that the foregoing represents our understanding and agreement in respect of this matter by signing below where indicated and returning the signed copy.

Sincerely,

**EVERCORE ADVISORS L.P.**

By: _____
Ciara A. Burnham
Senior Managing Director

The undersigned hereby agrees to the foregoing:

**DAVIS PETROLEUM CORP.**

By: _____
Daniel Armel
Authorized Representative

4