# EXHIBIT "C"

ORIGINAL

FORM B10 (Official Form 10) (Rev. 4/05)

| United States Bankruptcy Court — Southern District of Texas | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Davis Petroleum Corporation | Case Number: 06-20152 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Red Mountain Capital Partners LLC**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

United States Courts
Southern District of Texas
FILED

APR 2 0 2006

Michael N. Milby, Clerk of Court

Name and address where notices should be sent:
See Attached

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone number:

This space is for Court Use Only

Account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: _____

**1. Basis for Claim**
☐ Goods sold
☒ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Last four digits of SS#: _____
Unpaid compensation for services performed
from _____ to _____
     (date)         (date)

**2. Date debt was incurred:** January 31, 2005

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 500,000.00 _____ _____ _____ $500,000.00
                                              (unsecured)   (secured)   (priority)   (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.** — See Attached
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any $_____

**6. Unsecured Nonpriority Claim** $ 500,000.00
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**9. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

Date: 4/18/06
Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
_[signature]_ —Willem Mesdag, Partner

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

1138144.2

Exhibit "C"

**Attachment to Proof of Claim**
**In re Davis Petroleum Corporation, Case Number 06-20152**

*Name and address where notices should be sent:*

    Red Mountain Capital Partners LLC
    Attention: Willem Mesdag
    10100 Santa Monica Boulevard
    Suite 925
    Los Angeles, CA 90067
    Telephone:   (310) 432-0202

    - and -

    Munger, Tolles & Olson LLP
    Attention: Thomas B. Walper
    355 South Grand Avenue, 35th Floor
    Los Angeles, California 90071-1560
    Telephone:   (213) 683-9193

1.     *Basis for Claim:*

    Red Mountain Capital Partners LLC ("Red Mountain") is party to that certain letter agreement by and among Red Mountain, Gregg J. Davis ("Mr. Davis"), and Davis Petroleum Corporation ("Davis Petroleum"), dated January 31, 2005 (the "Advisory Services Agreement") attached as Exhibit 1 hereto. Pursuant to the Advisory Services Agreement, Red Mountain was retained by Mr. Davis, personally and in his capacity as President of Davis Petroleum, to advise Mr. Davis, his management and Davis Acquisition Corp., their prospective acquisition vehicle (collectively, the "DPC Management") in connection with a contemplated acquisition of Davis Petroleum by the DPC Management and its selected private equity partner (the "Transaction"). A majority of Davis Petroleum's shareholders approved of the contemplated Transaction as necessary to provide essential new capital for Davis Petroleum and to generate shareholder liquidity, and therefore granted Mr. Davis broad authority to effectuate the Transaction, including the authority to enter into the Advisory Services Agreement. Subsequent to the execution of the Advisory Services Agreement, Mr. Davis solicited transaction proposals from numerous potential private equity partners and requested and received the advisory services of Red Mountain in connection with such proposals (the "Services"). Any such proposal and any negotiated variation thereof, if consummated, constituted a "Transaction" as defined in the Advisory Services Agreement.

    Under the terms of the Advisory Services Agreement, Red Mountain was entitled to a fee of $10,000 per month (the "Monthly Retainer") plus, upon the consummation of a Transaction, an additional transaction fee equal to the greater of $250,000 or 0.5% of the new capital raised to complete the Transaction excluding capital used to acquire existing Davis Petroleum shares (the "Success Fee"). Because the contemplated Transaction was an acquisition

1176524.9

2

of Davis Petroleum by the DPC Management and its selected private equity partner, the Advisory Services Agreement provided that Red Mountain was retained to advise the DPC Management rather than Davis Petroleum. Nevertheless, it was the clear intent and understanding of the parties that the Services were for the benefit of Davis Petroleum and its shareholders and that any Transaction would be subject to the approval of Davis Petroleum. Accordingly, under the terms of the Advisory Services Agreement, Davis Petroleum guaranteed the payment of Red Mountain's fees, provided office space for Red Mountain and agreed to indemnify Red Mountain in connection with the Services. Consistent with such understanding, Red Mountain received and relied on the unambiguous oral agreements and assurances of Mr. Davis, in his capacity as President of Davis Petroleum, that Red Mountain's advisory fees under the Advisory Services Agreement would be a direct obligation of Davis Petroleum to the extent they were not satisfied by any other party to a Transaction. Such oral agreements and assurances had the effect of amending the Advisory Services Agreement so as to provide that Davis Petroleum was directly liable for Red Mountain's advisory fees thereunder. In reliance on Mr. Davis's oral agreements and assurances, Red Mountain provided the Services from January 31, 2005 through October 26, 2005 and Davis Petroleum directly assumed the payment obligations therefor, as evidenced by its regular and unqualified payment of the Monthly Retainer during that period and its acknowledgment of its obligation to pay the Success Fee in connection with the Original Evercore Deal (as defined and described below).

On October 26, 2005, Davis Petroleum, acting through its independent director, Dan Armel (the "Independent Director"), entered into an agreement with Evercore Advisors, L.P., the DPC Management's selected private equity partner ("Evercore"), to negotiate exclusively the terms of a transaction (the "Original Evercore Deal") subject to further due diligence, definitive documentation and shareholder approval. As of such date, Red Mountain ceased to provide the Services and Davis Petroleum ceased to pay the Monthly Retainer; however, an obligation to pay the Success Fee pursuant to the Advisory Services Agreement remained in effect. Mr. Davis confirmed that the consummation of the Original Evercore Deal, as a Transaction under the Advisory Services Agreement, would trigger the Success Fee, that the Success Fee would be an obligation of Davis Petroleum, and that the Success Fee would be in the amount of 0.5% of new capital raised to complete the Transaction excluding any capital used to acquire existing Davis Petroleum shares (as represented by the equity value received in the Transaction by the Davis Petroleum shareholders). In connection with the closing of the Original Evercore Deal, the Independent Director agreed to a Success Fee of $600,000 and negotiated a contribution of $300,000 toward such obligation from Evercore.[1]

Ultimately, Davis Petroleum was not able to secure 100% shareholder approval for the Original Evercore Deal; however, it subsequently agreed with Evercore to consummate a

---

[1] Davis Petroleum's obligation to pay the Success Fee and Evercore's contribution thereto under the Original Evercore Deal (as well as Davis Petroleum's obligation to pay the Monthly Retainer) is set forth on Exhibit 12 to the Debtor's Disclosure Statement. Based on the terms of the Original Evercore Deal ($195 million of new capital raised less an estimated $75 million of equity value received in the Transaction by the Davis Petroleum shareholders, leaving net new capital in the amount of $120 million raised to complete the Transaction), the Success Fee was calculated to be $600,000. The Success Fee in the Revised Evercore Deal is larger ($800,000) because the amount of new capital required to complete the Transaction was larger.

1176524.9

3

substantially similar transaction (with revised terms) in connection with its prepackaged plan of reorganization (the "Revised Evercore Deal"). As a negotiated variation of the Original Evercore Deal, the Revised Evercore Deal is a Transaction under the Advisory Services Agreement and, as such, entitled Red Mountain to a Success Fee upon its closing on March 31, 2006. In connection with the Revised Evercore Deal, Mr. Davis reconfirmed his oral agreements and assurances that the Success Fee was a direct obligation of Davis Petroleum and would be payable upon the closing to the extent it was not paid by Evercore. Consistent with such oral agreements and assurances, Red Mountain requested payment of the Success Fee from Davis Petroleum and Evercore prior to the closing of the Revised Evercore Deal. Acknowledging its agreement to contribute $300,000 to the Success Fee in the Original Evercore Deal, Evercore agreed to contribute the same amount to Red Mountain's Success Fee for the Revised Evercore Deal, and made such payment at the closing. Davis Petroleum, through its counsel, advised Red Mountain that it would not pay the balance of the Success Fee at the closing and invited Red Mountain to file a proof of claim. Accordingly, Red Mountain has a claim against Davis Petroleum for the balance of the Success Fee in the amount set forth in this proof of claim.

4. <u>Total Amount of Claim at Time Case Filed</u>:

As of Davis Petroleum's March 7, 2006 petition date (the "Petition Date"), Davis Petroleum owed Red Mountain the following amounts:

(i) $250,000, under the terms of the Advisory Services Agreement, for advice to Davis Petroleum on obtaining bridge financing necessary to fund operations until the Transaction could be consummated (the "Bridge Financing Fee"); and

(ii) $800,000 for the Success Fee, which became liquidated and noncontigent upon the closing of the Transaction on March 31, 2006. In accordance with the Advisory Services Agreement, the Success Fee is calculated as 0.5% of the new capital raised to complete the Revised Evercore Deal (which excludes capital used to purchase then existing Davis Petroleum shares). In the Revised Evercore Deal, Evercore paid $160 million to Davis Petroleum at closing and committed to provide Davis Petroleum with an additional $30 million of new capital (for total new capital raised in the amount of $190 million). Of such capital, the amount available for distribution to the former Davis Petroleum shareholders, i.e. the equity value received in the Transaction by the Davis Petroleum shareholders, is estimated to be $30 million. Accordingly, the net new capital raised to complete the Transaction is $160 million and the Success Fee is $800,000.[2]

On March 31, 2006, Red Mountain received: (i) $250,000 from Davis Petroleum for payment of the Bridge Financing Fee and (ii) $300,000 from Evercore as a contribution toward

---

[2] This calculation is the formula set forth in the Advisory Services Agreement and identical to the formula used to calculate the Success Fee under the Original Evercore Deal. The amount of the Success Fee ($800,000) increased from the pre-closing estimate ($775,000) as a result of a decrease in the amount of new capital used to purchase the equity of former Davis Petroleum shareholders from $35 million to $30 million, thereby increasing the net new capital raised to complete the Revised Evercore Deal from $155 million to $160 million. Therefore, the actual amount of the Success Fee due at the closing equals 0.5% of $160 million, or $800,000.

Davis Petroleum's obligation to pay the Success Fee. Accordingly, as of the filing of this proof of claim, Red Mountain's claim against Davis Petroleum is for the balance of the Success Fee in the amount of $500,000.

8. <u>Supporting Documents</u>:

Attached to this proof of claim are the following supporting documents:

<u>Exhibit 1</u>:   A true and correct copy of the Advisory Services Agreement.

<u>Reservation of Rights</u>:

The claims set forth above are qualified by the following reservation of rights.

By filing this proof of claim, Red Mountain (i) does not submit to the jurisdiction of this Court for any purpose other than with respect to this proof of claim, (ii) does not waive (and expressly reserves) all of its procedural and substantive defenses to any claim that may be asserted against it by Davis Petroleum, its estate, or any successor entity, or any other person, including, without limitation, any defense based upon the lack of jurisdiction of this Court to entertain any such claim, (iii) does not waive (and expressly reserves) any claim, right, or right of action that Red Mountain has or might have against Davis Petroleum, its estate, any successor entity, or any other person, whether such claim, right, or action arises prior to, upon or after the Petition Date, and (iv) does not waive (and expressly reserves) any and all other rights that it may have pursuant to applicable law or agreement.

Red Mountain reserves the right to (i) amend, update, or supplement this proof of claim and any other proof of claim filed in this case in any manner and for any purpose including for the purpose of asserting alternative theories of recovery or a right of setoff, (ii) file additional proofs of claim including proofs of claim asserting alternative theories of recovery, (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507, (iv) seek relief under 11 U.S.C. § 502(c), and (v) seek relief under 11 U.S.C. § 502(i). This proof of claim is not intended to be, and shall not be construed as, an election of remedies, a waiver of any defaults or a waiver or limitation of any rights, remedies, claims, or interests of Red Mountain under the Advisory Services Agreement.

1176524 9



716908.1

6

## RED MOUNTAIN CAPITAL PARTNERS LLC

**PERSONAL AND CONFIDENTIAL**



January 31, 2005

Mr. Gregg J. Davis
President
Davis Petroleum Corp.
1360 Post Oak Blvd., Suite 2400
Houston, TX 77056

Dear Gregg:

This letter confirms the understanding and agreement among Gregg J. Davis ("you"), Davis Acquisition Corp., a company to be formed by you (the "Company"), Davis Petroleum Corp. ("DPC"), and Red Mountain Capital Partners LLC ("Red Mountain") as follows:

Red Mountain has been retained on behalf of and will report solely to you and the Company, notwithstanding that certain agreements in support of Red Mountain's retention are made by DPC herein. As such, Red Mountain's client is, and Red Mountain will provide its services solely to you and the Company (rather than DPC). Red Mountain will serve as your and the Company's advisor in connection with the possible management led buyout of DPC (the "Transaction"). Immediately upon consummation of the Transaction, you shall cause the Company to assume the obligations of DPC hereunder pursuant to a written agreement.

In connection with this engagement, the Company will pay Red Mountain a fee of $10,000 per month, payable on the last day of each month. In addition, upon consummation of the Transaction, the Company agrees to pay Red Mountain at closing a cash fee equal to the greater of $250,000 or 0.5% of the new capital raised to complete the Transaction (but not to include capital that is used to purchase shares from the Davis family).

We also understand that, in order to fund DPC prior to the Transaction, the Company may require DPC and Sankaty Advisors, LLC ("Sankaty") to amend the Sankaty Senior Subordinated Secured Note Agreement and/or to obtain an additional financing commitment from Sankaty (collectively, the "Sankaty Bridge"). Red Mountain will advise the Company and DPC in negotiating the Sankaty Bridge and, if the Sankaty Bridge is successfully negotiated, the Company will cause DPC to pay Red Mountain an additional fee of $250,000 at the closing of the Sankaty Bridge. If the Company and DPC are not able to obtain the Sankaty Bridge, Red Mountain will use its best efforts to propose to DPC a bridge financing facility with net proceeds of up to $17,000,000.

2121 AVENUE OF THE STARS • LOS ANGELES, CA • 90067
PHONE: 310.551.2227 • FAX: 310.551.2764

The Company also agrees to reimburse Red Mountain periodically, upon request, for reasonable out-of-pocket expenses incurred in connection with this engagement. In support of Red Mountain's retention by you and the Company, DPC will guarantee payment of Red Mountain's fees hereunder and you and DPC will cause Davis Companies to continue to provide Red Mountain with its current offices and related services unless such offices are subleased by Davis Companies to a third party.

Any written or oral advice provided by Red Mountain in connection with this engagement is exclusively for the information of you and the Company and may not be disclosed to any third party or circulated or referred to publicly without Red Mountain's prior written consent.

This engagement may be terminated by you and the Company or by Red Mountain at any time with or without cause and effective upon receipt of written notice. If this engagement is terminated by you and the Company on or prior to a fee payment date as described above, the Company will pay Red Mountain all fee amounts due through and including such fee payment date and the Company will not owe Red Mountain any amounts with respect to subsequent fee payment dates. If this engagement is terminated by Red Mountain, the Company will pay Red Mountain all fee amounts due through and including the fee payment date *prior* to the date of termination and will not owe Red Mountain any amount with respect to subsequent fee payment dates. In the event of a termination of this engagement, the Company will continue to be responsible for reasonable out-of-pocket expenses as described above.

It is Red Mountain's policy to receive indemnification in connection with the provision of strategic advisory services. In that regard and in support of Red Mountain's retention by you and the Company, DPC agrees to the provisions with respect to indemnification and other matters set forth in Annex A which is incorporated by reference into this engagement letter. DPC recognizes that, in providing services under this engagement, Red Mountain will rely upon and assume the accuracy and completeness of all financial and other information discussed with or reviewed by Red Mountain for such purposes, and Red Mountain will not assume responsibility for the accuracy or completeness thereof. Red Mountain will not have an obligation to conduct an independent evaluation or appraisal of the assets or liabilities of DPC or any other party.

It is understood and agreed that Red Mountain will act under this engagement as an independent contractor with duties solely to you and the Company. Nothing in this letter or the nature of Red Mountain's services shall be deemed to create an employment, fiduciary or agency relationship between Red Mountain and its employees and the Company, DPC, their shareholders, their directors or their officers. Except as set forth in Annex A hereto, nothing in this letter is intended to confer upon any other person (including shareholders, employees or creditors of the Company or DPC) any rights or remedies hereunder or by reason hereof. Neither Red Mountain nor its employees will have any liability to you, the Company or DPC in connection with or as a result of this engagement or any matter referred to in this letter except to the extent that any losses, claims, damages, liabilities or expenses incurred by you, the Company or DPC result from Red Mountain's or its employees'

8

gross negligence or bad faith in performing the services that are the subject of this letter.

Please confirm that the foregoing is in accordance with your understanding by signing and returning to me the enclosed copy of this letter, which will become a binding agreement upon receipt. We are delighted to accept this engagement and look forward to working with you on this important strategic advisory assignment.

Sincerely yours,

RED MOUNTAIN CAPITAL PARTNERS LLC
By: _____
Willem Mesdag, Managing Partner


Confirmed:
GREGG J. DAVIS
_____


DAVIS PETROLEUM CORP.
By: _____

Gregg J. Davis, President

9

### Annex A

In the event that Red Mountain Capital Partners LLC ("Red Mountain") or its employees, become involved in any capacity in any action, proceeding or investigation brought by or against any person, including Gregg J. Davis ("you"), Davis Acquisition Corp. (the "Company"), Davis Petroleum Corp. ("DPC"), or their shareholders or creditors, in connection with or as a result of either this engagement or any matter referred to in this letter, DPC periodically will reimburse Red Mountain and its employees for their legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith. DPC also will indemnify and hold Red Mountain and its employees harmless against any and all losses, claims, damages or liabilities to any such person in connection with or as a result of either this engagement or any matter referred to in this letter, except to the extent that any such loss, claim, damage or liability results from the gross negligence or bad faith of Red Mountain or its employees in performing the services that are the subject of this letter. If for any reason the foregoing indemnification is unavailable to Red Mountain or its employees or insufficient to hold them harmless, then DPC shall contribute to the amount paid or payable by Red Mountain or its employees as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative economic interests of DPC and its shareholders or creditors on the one hand and Red Mountain and its employees on the other hand in the matters contemplated by this letter as well as the relative fault of you, the Company, DPC and Red Mountain and its employees with respect to such loss, claim, damage or liability and any other relevant equitable considerations. The reimbursement, indemnity and contribution obligations of DPC under this paragraph shall be in addition to any liability which DPC may otherwise have. You, the Company and DPC also agree that Red Mountain and its employees shall not have any liability to you, the Company and DPC or any person asserting claims on behalf of or in right of you, the Company or DPC in connection with or as a result of either his engagement or any matter referred to in this letter except to the extent that any losses, claims, damages, liabilities or expenses incurred by you, the Company or DPC result from the gross negligence or bad faith of Red Mountain or its employees in performing the services that are the subject of this letter. **Any right to trial by jury with respect to any action or proceeding arising in connection with or as a result of either this engagement or any matter referred to in this letter is hereby waived by the parties hereto. The provisions of this Annex A shall survive any termination or completion of the engagement provided by this letter, and this letter shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of laws.**