# EXHIBIT 1

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 51]

# EXHIBIT 2

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 18]

# EXHIBIT 3

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 17 at Ex. B]

# EXHIBIT 4

# TO WITTSTEIN AFFIDAVIT

# [<u>See</u> Docket No. 17]

# EXHIBIT 5

# TO WITTSTEIN AFFIDAVIT

## [<u>See</u> Docket No. 202 for Reference to Availability of Transcript of Motion Hearing in Court's Fileroom]

# EXHIBIT 6

# TO WITTSTEIN AFFIDAVIT

**From:** Festa, Deborah

**Sent:** Wednesday, June 08, 2005 9:04 AM

**To:** 'fnorton@bsfllp.com'; 'David Shapiro'; 'Brad Ruskin'; 'Ed Landry'; 'Jerry Coben'; 'Jon Koslow'; 'Larry Rothenberg'; 'Mike Diamond'; 'Rich Levin'; 'Tom Holliday'

**Cc:** 'armeld@aol.com'; White, Robert; Levin, James; White, Robert

**Subject:** Davis Petro - Updated Contact List

<<#1079560 v1 - Davis Petro - Attorneys Contact List.doc>>

Attached for your reference is a revised contact list, which includes updated contact information for counsel involved in this matter.

Best regards,

Deborah

Deborah M. Festa

O'Melveny & Myers LLP

400 South Hope Street

Los Angeles, California  90071-2899

Direct: (213) 430-6323

Facsimile: (213) 430-6407

dfesta@omm.com

*This message and any attached documents contain information from the law firm*

*of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are*

*not the intended recipient, you may not read, copy, distribute, or use this*

*information. If you have received this transmission in error, please notify the*

*sender immediately by reply e-mail and then delete this message.*



#1079560 v1 - Davis Petro - Attorneys Contact List.doc

## Davis Petroleum Corp. Contact List

| Attorneys Representing | Telephone Numbers | Email Addresses |
| --- | --- | --- |

**Edward A. Landry**  **(213) 629-7657** direct   e.landry@mpglaw.com
   **Barbara Davis**
MUSICK, PEELER & GARRETT LLP   (213) 629-7600 – main
One Wilshire Blvd., Suite 2000   (213) 379-1590 - cell
Los Angeles, CA 90017-3321   (213) 624-1376 - fax
Assistant is Emily Kaddo  (213) 629-7949   e.kaddo@mpglaw.com

**David W. Shapiro**   **(510) 874-1005**   dshapiro@bsfllp.com
   **Patricia Raynes**
BOIES SCHILLER & FLEXNER, LLP   (510) 874-1460 – fax
1999 Harrison St., Suite 900
Oakland, CA 94612

**Fred Norton**   **(510) 874-1005**   fnorton@bsfllp.com
   **Patricia Raynes**
BOIES SCHILLER & FLEXNER, LLP   (510) 874-1460 – fax
1999 Harrison St., Suite 900
Oakland, CA 94612

**Jonathan L. Koslow**   (212) 735-2810 direct   jkoslow@skadden.com
   **John Davis**
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP   (212) 735-3000 - main
Four Times Square   (917) 777-2810 - fax
New York, NY 10036-6522
Assistant is Maggie Gonzalez (212) 735-2811

**Jerry (Jerome) Coben** (Corporate matters)   jcoben@skadden.com
   **John Davis**
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP   (213) 687-5000 – main
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071

**Rich (Richard) Levin** (Creditor rights aspects)   rlevin@skadden.com
   **John Davis**
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP   (213) 687-5000 – main
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071

**Michael H. Diamond**   **(213) 892-4500** direct   mdiamond@milbank.com
   **Nancy Davis**
MILBANK, TWEED, HADLEY & McCLOY LLP   (213) 892-4000 - main
601 S. Figueroa Street, Suite 3000   (310) 600-0300 - cell
Los Angeles, CA 90017   (213) 892-4700 - fax
Assistant is Kristina Valentine (213) 892-4502

**Thomas E. Holliday**          **(213) 229-7370**  direct     tholliday@gibsondunn.com
 **Gregg Davis**
GIBSON, DUNN & CRUTCHER LLP          (213) 229-7000 – main
333 S. Grand Avenue          (800) 483-5875 – pager
Los Angeles, CA 90017-3197          (213) 229-6370 - fax
Assistant is Jodi Arneson (213) 229-7371          jarneson@gibsondunn.com

**Michael Pierce** (Management Recap)          **(713) 217-2837**     michael.pierce@tklaw.com
 **Gregg Davis**
THOMPSON & KNIGHT          (713) 562-6376 – mobile

**Willem Mesdag** (Financial Adviser re: Management Recap)     wmesdag@davcos.com
 **Gregg Davis**
RED MOUNTAIN CAPITAL PARTNERS LLC          (310) 551-2289
Managing Partner          (310) 551-2764 - fax
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067

**Bradley I. Ruskin**          **(212) 969-3465**  direct     bruskin@proskauer.com
 **Dana Davis**
PROSKAUER ROSE LLP          (212) 969-3000 – main
1585 Broadway, 17th Floor          (917) 696-2284 - cell
New York, NY 10036          (212) 969-2900 - fax
Assistant is Milele Ankoma – x. 14545

**Lawrence Rothenberg**          **(212) 969-3615**
     LRothenberg@proskauer.com
 **Dana Davis**
PROSKAUER ROSE LLP          (212) 969-3000 – main
1585 Broadway, 17th Floor
New York, NY 10036          (212) 969-2900 – fax

**John D. (Jack) Hardy, Jr.**   **(213) 430-6393**     jhardy@omm.com
**Marc Feinstein**          **(213) 430-7274**     mfeinstein@omm.com
**James C. Levin**          **(213) 430-6578**     jlevin@omm.com
**Deborah Festa**          **(213) 430-6323**     dfesta@omm.com
 **Davis Petroleum Corp./Special Committee**
O'MELVENY & MYERS LLP          (213) 430-6000 – main
400 South Hope Street
Los Angeles, CA  90071          (213) 430-6407 – fax

**Robert J. White**          **(310) 246-8485**     rwhite@omm.com
 **Davis Petroleum Corp./Special Committee**
O'MELVENY & MYERS LLP          (310) 553-6700 – main
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035          (310) 246-6779 – fax

**James M. Jordan** (Sankaty and Senior Loan Amendments)
   jjordan@porterhedges.com
   **Davis Petroleum Corp.**
PORTER & HEDGES, L.L.P.                           (713) 226-6692 – direct
1000 Main Street, 36th Floor
Houston, TX 77002                                (713) 226-6292 – fax


**Daniel E. Armel**          **(626) 405-1123**          armeld@aol.com
   **Davis Petroleum Corp./Special Committee**
BAYMARK STRATEGIES LLC
1270 Glen Oaks Boulevard
Pasadena, CA  91105-1154                         (626) 405-1124 – fax

# EXHIBIT 7

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 16]

# EXHIBIT 8

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 17 at Ex. C]

# EXHIBIT 9

# TO WITTSTEIN AFFIDAVIT

# [<u>See</u> Adv. Proc. Docket No. 4 at Ex. C]

# EXHIBIT 10

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 17 at Ex. 9]

# EXHIBIT 11

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 17 at Ex. 4]

# EXHIBIT 12

# TO WITTSTEIN AFFIDAVIT

## WRITTEN CONSENT OF THE STOCKHOLDERS
## IN LIEU OF SPECIAL MEETING
## OF

## <u>DAVIS PETROLEUM CORP.</u>,
### a Delaware corporation

Pursuant to the provisions of the Delaware General Corporation Law and the Amended and Restated Bylaws of Davis Petroleum Corp., a Delaware corporation (the "Corporation"), the undersigned persons (the "Stockholders"), representing holders of at least a majority of the issued and outstanding shares of stock of the Corporation, do hereby dispense with the formality of a special meeting and hereby adopt the following resolutions:

<u>ELECTION OF DIRECTOR</u>

WHEREAS, the Bylaws of the Corporation authorize the Board of Directors of the Corporation (the "Board of Directors") to consist of not less than three nor more than seven members;

WHEREAS, on October 14, 2003, four Directors were elected to the Board of Directors, of which only three remain in office on the date hereof;

WHEREAS, the Stockholders have been provided with biographical and other information relating to the qualifications of Mr. Daniel E. Armel ("Mr. Armel") to serve as a Director of the Corporation; and

WHEREAS, the Stockholders have determined it to be in the best interests of the Corporation to elect Mr. Armel as a Director of the Corporation.

NOW, THEREFORE, BE IT RESOLVED, that Mr. Armel be, and hereby is, elected as a Director of the Corporation until displaced in accordance with the Bylaws of the Corporation.

*[Remainder of page intentionally left blank.]*

This Written Consent may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same written instrument. This Written Consent shall be filed with the Secretary of the Corporation, who is hereby instructed to insert it in the Minute Book of the Corporation.

Each signatory below represents that he or she has the requisite authority to sign on behalf of the respective trust for which he or she is signing.

Dated as of May _6_, 2005

JOHN DAVIS TRUST

By:_____
    Name:

PATRICIA DAVIS RAYNES TRUST

By:_____
    Name:

NANCY SUE DAVIS TRUST

By:_____
    Name:

DANA LEIGH DAVIS TRUST

By:_____
    Name:

MARVIN AND BARBARA DAVIS
REVOCABLE TRUST

By:_____
    Name:

GREGG DAVIS TRUST

By:_____
    Name:

This Written Consent may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same written instrument. This Written Consent shall be filed with the Secretary of the Corporation, who is hereby instructed to insert it in the Minute Book of the Corporation.

Each signatory below represents that he or she has the requisite authority to sign on behalf of the respective trust for which he or she is signing.

Dated as of May 4, 2005

JOHN DAVIS TRUST

By:_____
    Name:

PATRICIA DAVIS RAYNES TRUST

By:_____
    Name:

NANCY SUE DAVIS TRUST

By:_____
    Name:

DANA LEIGH DAVIS TRUST

By: _Dan Leigh Davis_, Trustee
    Name:

MARVIN AND BARBARA DAVIS
REVOCABLE TRUST

By:_____
    Name:

GREGG DAVIS TRUST

By:_____
    Name:

LA1:1075611.4

This Written Consent may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same written instrument.  This Written Consent shall be filed with the Secretary of the Corporation, who is hereby instructed to insert it in the Minute Book of the Corporation.

Each signatory below represents that he or she has the requisite authority to sign on behalf of the respective trust for which he or she is signing.

Dated as of May 5, 2005

JOHN DAVIS TRUST

By:_____
    Name:

PATRICIA DAVIS RAYNES TRUST

By:_____
    Name:

NANCY SUE DAVIS TRUST

By:_____
    Name:

DANA LEIGH DAVIS TRUST

By:_____
    Name:

MARVIN AND BARBARA DAVIS
REVOCABLE TRUST

By:_____
    Name:

GREGG DAVIS TRUST

By:_____
    Name:

LA1:1075611.4

This Written Consent may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same written instrument. This Written Consent shall be filed with the Secretary of the Corporation, who is hereby instructed to insert it in the Minute Book of the Corporation.

Each signatory below represents that he or she has the requisite authority to sign on behalf of the respective trust for which he or she is signing.

Dated as of May ____, 2005

JOHN DAVIS TRUST

By:_____
　　Name:

PATRICIA DAVIS RAYNES TRUST

By:_____
　　Name:

NANCY SUE DAVIS TRUST

By:_____
　　Name:

DANA LEIGH DAVIS TRUST

By:_____
　　Name:

MARVIN AND BARBARA DAVIS
REVOCABLE TRUST

By:_____
　　Name:

GREGG DAVIS TRUST

By:_____
　　Name:

LA1:1075611.4

This Written Consent may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same written instrument. This Written Consent shall be filed with the Secretary of the Corporation, who is hereby instructed to insert it in the Minute Book of the Corporation.

Each signatory below represents that he or she has the requisite authority to sign on behalf of the respective trust for which he or she is signing.

Dated as of May 5, 2005

JOHN DAVIS TRUST

By:_____
     Name:

PATRICIA DAVIS RAYNES TRUST

By:_____
     Name:

NANCY SUE DAVIS TRUST

By:_____
     Name:

DANA LEIGH DAVIS TRUST

By:_____
     Name:

MARVIN AND BARBARA DAVIS
REVOCABLE TRUST

By:_____
     Name:

GREGG DAVIS TRUST

By:_____
     Name:

# EXHIBIT 13

# TO WITTSTEIN AFFIDAVIT

Execution Copy

# DAVIS PETROLEUM CORP.
# DAVIS PETROLEUM PIPELINE, LLC
# DAVIS OFFSHORE, L.P.

May 1, 2005

<u>Private and Confidential</u>

Mr. Daniel E. Armel
1270 Glen Oaks Blvd.
Pasadena, CA  91105-1154

Dear Mr. Armel:

When executed by all of the signatories hereto, this letter (this "Agreement"), shall constitute an agreement between (i) Davis Petroleum Corp. ("DPC"), a Delaware corporation, Davis Petroleum Pipeline, LLC ("DPP"), a Delaware limited liability company, and Davis Offshore, LP ("DO"), a Delaware limited partnership (DPC, DPP and DO, whose obligations hereunder shall be joint and several,  are collectively referred to herein as the "Company"), and (ii) Daniel E. Armel ("Armel"), a natural person, residing in Los Angeles County, California.

## Recitals

A.      DPC operates or is developing certain oil and gas properties in Wyoming, Colorado, Oklahoma, Texas and Louisiana, and is conducting onshore exploratory activities in these states.

B.      DPP owns 100% of two oil and gas pipelines and holds a 25% interest in three other pipelines, all of which are located in Galveston Bay, Texas, and all of which, together with related facilities, transport, process and store oil and gas from an offshore production platform in which DPC holds a 25% working interest.

C.      DO conducts exploratory activities in the Gulf of Mexico, and structures and negotiates arrangements with other parties to develop and operate its discoveries.

D.      Each of DPC, DPP and DO is owned jointly by trusts for the benefit of certain members of the Davis family and each conducts its business as part of the same economic enterprise.

LA1:1076393.6

E.      The Company is in the process of evaluating various alternatives with respect to its (i) general direction and strategic undertakings, (ii) capital structure and financings, and (iii) ownership, including without limitation, potential Equity Transactions, Financing Transactions and Interim Operations, as defined below.

F.      The board of directors or comparable governing entity or person with respect to each of DPC, DPP and DO has determined that it is in such entity's and the Company's best interests to identify an independent individual to serve as an independent director, act as a special committee or act in a similar capacity for each of DPC, DPP and DO and who shall be charged with the responsibilities set forth below with respect to each such entity and the Company.

G.      Armel has been identified as a person possessing the skills, expertise, experience and independence necessary and appropriate to serve in the foregoing capacity, and Armel is prepared to serve in such capacity subject to the terms and conditions hereof.

H.      Armel has been elected to the board of directors of DPC (the "Board") by the written consent of the record holders of 82.4% of the outstanding capital stock of DPC, which holders also, directly or indirectly, own and control approximately 80% of the economic interests in DPP and DO.

### Agreement

1.      **Scope of Duties and Services**. Armel shall (a) inform himself of the Company's operations, activities, revenues, cost structure and near-term prospects; (b) inform himself of the Company's financial condition, capital structure and financing arrangements; (c) arrive at a preliminary estimate of the Company's range of values under various assumptions; and (d) participate in all matters presented for consideration by the Board and each comparable governing entity.

Specifically, Armel shall have the express authority to do the following, to the fullest extent permitted by applicable law and the relevant Company's certificate of incorporation, bylaws or other charter or governing documents:

(a)     **Equity Transactions**. (i) Review and evaluate, and consider whether it is in the best interests of the Company to enter into, potential equity recapitalization transactions, sale transactions, acquisition transactions, business combinations and other strategic transactions presented to or considered by the Company (each an "Equity Transaction"); (ii) directly or indirectly, solicit or receive proposals from persons or entities that propose to enter into any Equity Transaction with the Company, and (iii) if Armel determines an Equity Transaction is in the best interest of the Company, to take, subject to the limitations of applicable law, all action which could be taken by the Board or other comparable governing entity with respect to such transaction or to make a recommendation to the Board or other comparable governing entity or the owners of the Company with respect to such transaction;

(b)   **Financing Transactions.** Directly or indirectly, solicit, receive, review and evaluate proposals for the financing of the Company's operations pending the consummation of any Equity Transaction (each a "Financing Transaction"), including without limitation, proposals for the amendment of the Company's existing senior or subordinate financing arrangements, or both, or for the provision of additional or bridge financing from the Company's existing lenders or such new lenders as may be identified by or brought to the attention of Armel, including such additional borrowings from new lenders or increases in amounts available under existing arrangements as Armel shall deem necessary or appropriate in the best interests of the Company, and to take all actions which could be taken by the Board or other comparable governing entity with respect to any such Financing Transaction;

(c)   **Interim Operations.** Oversee the business, operations and finances of the Company pending the consummation of an Equity Transaction, including, without limitation, overseeing and approving or rejecting investment and management decisions with respect to new or ongoing projects and activities, overseeing and approving or rejecting decisions with respect to operating and overhead expenses (including the hiring and retention of personnel) and cash management decisions, and taking all such actions which could be taken by the Board or other comparable governing entity with respect thereto; and

(d)   **Other Actions.** Perform any other activities consistent with this Agreement, the Company's charter documents and governing law as Armel or the Board or other comparable governing entity deems necessary or appropriate.

In carrying out his duties, hereunder, Armel shall be entitled to act in reliance on the Company's management, accountants, counsel, internal auditors, and outside advisors and experts, to the extent Armel deems necessary or appropriate. As and to the extent Armel deems necessary or appropriate in fulfilling his duties, Armel shall have the authority to conduct, at the Company's expense, any investigations or studies of matters within Armel's scope of responsibilities and to retain, at the Company's expense, and obtain advice and assistance from, external advisors, including but not limited to investment banks and counsel selected by Armel. Armel shall have unrestricted access to the Company's employees, accountants, internal auditors, internal and outside counsel, outside advisors and experts and anyone else employed or retained by the Company, and may require any such persons to meet with him or any of his consultants or advisors.

2.   **Term.** This Agreement shall be effective as of May 1, 2005 and shall be for an initial period of two months (the "Initial Period"). Thereafter, this Agreement shall extend automatically on a month-to-month basis effective on the first day of each month (each, an "Extension Period") unless and until terminated pursuant to paragraph 10 hereof.

3.   **Fees.** In consideration of the aforesaid services, during the Initial Period, the Company shall pay Armel two earned-upon-receipt monthly retainers in the fixed amount of $45,000 each, upon execution of this Agreement and on June 1, 2005. During any Extension Period, Armel shall be compensated for his services at a rate of $550 per hour for the actual

time spent by Armel performing services hereunder. The Company shall continue to pay Armel retainers of $45,000 at the beginning of each Extension Period, and Armel shall provide the Company with an accounting of his time spent on behalf of the Company within 15 days after the last day of each month. In the event Armel's hourly charges during any Extension Period exceed $45,000, the Company shall add such amount to the following month's retainer. Should Armel's hourly charges during an Extension Period be less than $45,000, such amount shall be deducted from the following month's retainer.

4.     **Expense Reimbursement.** The Company shall reimburse Armel promptly, and in any event within ten business days, for reasonable and customary out-of-pocket expenses, including travel expenses, incurred by Armel in connection with his duties and the services performed hereunder. Armel's reimbursement requests shall be supported by itemized written accounts of such expenses.

5.     **Independent Contractor.** The parties acknowledge and agree that Armel is functioning as an independent contractor, is not an employee of the Company, is not eligible to participate in any of the Company's compensation or benefit plans, and is responsible for the payment of all applicable federal, state and local taxes due on payments received hereunder.

6.     **Absence of Conflict; Non-objection to Future Unrelated Engagements.** Other than under the terms of this Agreement, Armel does not hold any interest in the Company. Nor does Armel represent a party that is adverse to the Company. Armel further agrees not to acquire an interest in the Company or represent an adverse party during the course of this engagement. However, should Armel be asked in the future to represent, in a matter unrelated to this matter and the Company, a party that has dealings with the Company, the Company hereby agrees that it shall not object to Armel's future representation of such party in such unrelated matter.

7.     **Cooperation.** Armel shall be permitted to make such documentary reviews and personal inquiries as he, in his sole discretion, deems necessary to perform his duties, responsibilities and services under this Agreement. The Company's officers and employees, as well as the representatives of the shareholder trusts, shall cooperate with Armel in accommodating such informational requests and inquiries.

8.     **Confidentiality.** All information furnished to Armel by the Company pursuant to this Agreement is referred to in this Agreement as "Company Information." Company Information does not include information which (a) is or becomes generally available to the public other than as a result of disclosure by Armel or Armel's Representatives (which is defined to include, without limitation, Armel's affiliates, associates, employees, and agents), (b) was available to Armel or Armel's Representatives on a non-confidential basis prior to its disclosure by the Company, (c) becomes available to Armel or Armel's Representatives on a non-confidential basis from another person; provided that such person is not known by Armel or Armel's Representatives to be otherwise prohibited from transmitting the information to Armel or Armel's Representatives.

Armel agrees that he and his Representatives will keep the Company Information confidential and not disclose it in any manner (except as permitted by this Agreement) and will only use the Company Information for the purposes of performing his services hereunder, and Armel will disclose the Company Information only to those persons who need to know the Company Information to assist Armel with respect to the foregoing.

Armel agrees that the Company would not have an adequate remedy at law for money damages in the event that the provision of this Agreement is breached and agrees that the Company will be entitled to specific performance of the terms hereof in addition to any other remedy to which the Company may be entitled at law or in equity.

9.    **Indemnification**.  As a condition to the effectiveness of this Agreement, Armel and the Company shall enter into an indemnification agreement substantially in the form of Exhibit A hereto.

10.    **Termination**.  This Agreement shall terminate automatically upon the completion of a change of control of the ownership of the Company pursuant to an Equity Transaction or otherwise.  This Agreement may also be terminated (i) by any of DPC, DPP or DO, as to itself, by the action of a majority of the Board or other comparable governing entity or (ii) by Armel (a) if the Company commits a material breach of its obligations hereunder or otherwise undermines his ability to perform his duties or the services hereunder or (b) without cause at any time on or after July 1, 2005.  Upon termination, Armel shall submit a final accounting of time expended and costs and expenses incurred through the date of termination and shall either refund the excess amount of the last monthly retainer or submit an invoice for the deficiency.

11.    **Miscellaneous**.

(a)    Each of the signatories hereto represent and warrant that they are duly authorized by all necessary corporate or other action to execute this Agreement.

(b)    This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns; provided, however that Armel shall not assign or otherwise transfer any of his obligations hereunder.

(c)    This Agreement incorporates the entire understanding of the parties and supersedes all previous discussions and understandings, whether written or oral; and no modification or amendment of, or waiver under, this Agreement shall be valid unless in writing and signed by each of the parties hereto.

(d)    This Agreement shall be governed by and construed in accordance with the laws of the State of California.

(e)    If any term or provision hereof is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining terms and provisions of this Agreement shall remain in full force and effect.

(f)     Any unresolved dispute between the Company and Armel regarding the terms or provisions of or performance under this Agreement shall be submitted to binding arbitration in Los Angeles County, California.  The prevailing party shall be entitled to recover, in addition to the awarded amounts, its reasonable costs and expenses in connection therewith, including, but not limited to, arbitration and attorneys' fees.

If this Agreement properly sets forth our understanding, please execute and return a copy to Davis Petroleum Corp.; Attention:  Gregg Davis.

Sincerely,

**Davis Petroleum Corp.**

By:   Gregg Davis
Its:   President


**Davis Petroleum Pipeline, LLC**

By:   Gregg Davis
Its:   President


**Davis Offshore, L.P.**
By:  Davis Offshore Management LLC

By:
Its:   BARBARA DAVIS


Agreed as of the
date first above written:

_____
Daniel E. Armel

If this Agreement properly sets forth our understanding, please execute and return a copy to Davis Petroleum Corp.; Attention:  Gregg Davis.

Sincerely,

**Davis Petroleum Corp.**

By:   Gregg Davis
Its:   President


**Davis Petroleum Pipeline, LLC**

By:  _____
Its:  _____


**Davis Offshore, L.P.**
By:  Davis Offshore Management LLC

By:  _____
Its:  _____


Agreed as of the
date first above written:

Daniel E. Armel

# EXHIBIT 14

# TO WITTSTEIN AFFIDAVIT

## EXHIBIT A

### SPECIAL COMMITTEE CHARTER
### OF THE BOARD OF DIRECTORS
### OF
### DAVIS PETROLEUM CORP.

1.   **Purpose.**  The purpose of this Special Committee (the "Committee") is to discharge the responsibilities of the Board of Directors (the "Board") of Davis Petroleum Corp., a Delaware corporation (the "Company"), with respect to the transactions and events described in this Charter.

2.   **Membership.**  The Committee shall be comprised of one director appointed by the Board, who shall be neither a shareholder nor an employee of the Company.

3.   **Specific Responsibilities and Duties.**  The Committee shall have the express authority to do the following, to the fullest extent permitted by applicable law and the Company's Certificate of Incorporation and Bylaws:

   (a)   **Equity Transactions.**  (i) Review and evaluate, and consider whether it is in the best interests of the Company to enter into, potential equity recapitalization transactions, sale transactions, acquisition transactions, business combinations and other strategic transactions presented to or considered by the Company (each an "Equity Transaction"); (ii) directly or indirectly, solicit or receive proposals from persons or entities that propose to enter into any Equity Transaction with the Company, and (iii) if the Committee determines an Equity Transaction is in the best interest of the Company, to take, subject to the limitations of Section 141(c)(2) of the Delaware General Corporation Law, all action which could be taken by the Board with respect to such transaction or to make a recommendation to the Board or the shareholders of the Company with respect to such transaction;

   (b)   **Financing Transactions.**  Directly or indirectly, solicit, receive, review and evaluate proposals for the financing of the Company's operations pending the consummation of any Equity Transaction (each a "Financing Transaction"), including without limitation, proposals for the amendment of the Company's existing senior or subordinate financing arrangements, or both, or for the provision of additional or bridge financing from the Company's existing lenders or such new lenders as may be identified by or brought to the attention of the Committee, including such additional borrowings from new lenders or increases in amounts available under existing arrangements as the Committee shall deem necessary or appropriate in the best interests of the Company, and to take all actions which could be taken by the Board with respect to any such Financing Transaction;

   (c)   **Interim Operations.**  Oversee the business, operations and finances of the Company pending the consummation of an Equity Transaction, including, without limitation, overseeing and approving or rejecting investment and management decisions with respect to new or ongoing projects and activities, overseeing and approving or

rejecting decisions with respect to operating and overhead expenses (including the hiring and retention of personnel) and cash management decisions, and taking all such actions which could be taken by the Board with respect thereto; and

(d) **Other Actions.**   Perform any other activities consistent with this Charter, the Company's Bylaws and governing law as the Committee or the Board deems necessary or appropriate.

4. **Actions by Written Consent.**   Actions by written consent of the Committee will be kept with the regular corporate records of the Company.

5. **Reliance.**   In carrying out its duties, the Committee shall be entitled to act in reliance on the Company's management, accountants, counsel, internal auditors, and outside advisors and experts, to the extent the Committee deems necessary or appropriate.

6. **Investigations and Experts.**   As and to the extent the Committee deems necessary or appropriate in fulfilling its duties, the Committee shall have the authority to conduct, at the Company's expense, any investigations or studies of matters within the Committee's scope of responsibilities and to retain, at the Company's expense, and obtain advice and assistance from, external advisors, including but not limited to investment banks and counsel selected by the Committee.

7. **Required Participation of Employees.**   The Committee shall have unrestricted access to the Company's employees, accountants, internal auditors, internal and outside counsel, outside advisors and experts and anyone else employed or retained by the Company, and may require any such persons to meet with the Committee or any of its consultants or advisors.

8. **Dissolution of Committee.**   The sole member of the Committee shall serve the Company until a successor shall be appointed or until the Committee shall be disbanded, in either case by resolution of the Board.

**AMENDED AND RESTATED SPECIAL COMMITTEE CHARTER
OF THE BOARD OF DIRECTORS
OF
DAVIS PETROLEUM CORP.**

1.  **Purpose.**  The purpose of this Special Committee (the "Committee") is to discharge the responsibilities of the Board of Directors (the "Board") of Davis Petroleum Corp., a Delaware corporation (the "Company"), with respect to the transactions, litigation and events described in this Charter.

2.  **Membership.**  The Committee shall be comprised of one director appointed by the Board, who shall be neither a shareholder nor an employee of the Company.

3.  **Specific Responsibilities and Duties.**  The Committee shall have the express authority to do the following, to the fullest extent permitted by applicable law and the Company's Certificate of Incorporation and Bylaws:

    (a)  **Equity Transactions.**  (i) Review and evaluate, and consider whether it is in the best interests of the Company to enter into, potential equity recapitalization transactions, sale transactions, acquisition transactions, business combinations and other strategic transactions presented to or considered by the Company (each an "Equity Transaction"); (ii) directly or indirectly, solicit or receive proposals from persons or entities that propose to enter into any Equity Transaction with the Company, and (iii) if the Committee determines an Equity Transaction is in the best interest of the Company, to take, subject to the limitations of Section 141(c)(2) of the Delaware General Corporation Law, all action which could be taken by the Board with respect to such transaction or to make a recommendation to the Board or the shareholders of the Company with respect to such transaction.

    (b)  **Financing Transactions.**  Directly or indirectly, solicit, receive, review and evaluate proposals for the financing of the Company's operations pending the consummation of any Equity Transaction (each a "Financing Transaction"), including without limitation, proposals for the amendment of the Company's existing senior or subordinate financing arrangements, or both, or for the provision of additional or bridge financing from the Company's existing lenders or such new lenders as may be identified by or brought to the attention of the Committee, including such additional borrowings from new lenders or increases in amounts available under existing arrangements as the Committee shall deem necessary or appropriate in the best interests of the Company, and to take all actions which could be taken by the Board with respect to any such Financing Transaction.

    (c)  **Interim Operations.**  Oversee the business, operations and finances of the Company pending the consummation of an Equity Transaction, including, without limitation, overseeing investment and management decisions with respect to new or ongoing projects and activities, overseeing decisions with respect to operating and overhead

expenses (including the hiring and retention of personnel) and cash management decisions, and taking all such actions which could be taken by the Board with respect thereto.

**(d)**     **Raynes Litigation.**   Take the following actions in connection with that certain complaint captioned <u>Patricia Davis Raynes, et al vs. Marvin Davis, et al</u> (CD05-6740) filed in the United States District Court for the Central District of California naming, among others, certain officers and directors of the Company as defendants, and naming the Company as a nominal defendant (such complaint or any amendment or clarification thereof referred to herein as the "Raynes Complaint"):

(i)     Conduct an independent review and investigation of the allegations set forth in the Raynes Complaint with respect to the conduct and activities of those officers and directors of the Company in their respective capacities as such, and any other related matters that the Committee may conclude should be considered (such matters and allegations being hereinafter referred to collectively as the "Allegations");

(ii)     Obtain any and all materials, work product, and other information prepared or collected by management or employees of the Company, the Board or any committee thereof, or their respective advisers, in addition to such other documents or information from sources outside the Company that the Committee deems appropriate in its sole discretion;

(iii)     Reach its own independent determinations and conclusions regarding the Allegations and, accordingly, not be bound by any determinations or conclusions reached by the Board or any other committee thereof regarding such matters;

(iv)     Determine, in its sole discretion, whether the litigation with respect to the Allegations should be pursued, stayed or dismissed;

(v)     Take any other action, including the initiation of litigation, that the Committee deems appropriate in its sole discretion, against any director, officer, or employee of the Company based upon the Committee's determination that such individual improperly acted or failed to act with respect to the Allegations;

(vi)     Recommend to the Board, as the Committee deems appropriate, in the best interests of the Company and in accordance with applicable law, any other appropriate action that the Company should take in light of the Committee's conclusions regarding the Allegations;

(vii)     Determine the procedures and rules governing its investigation;

(viii)     Seek coverage for the Company and for its officers and directors under any applicable insurance policies, and respond to demands for indemnity made against the Company by any of its officers and directors; and

(ix)    Engage, and execute and deliver engagement letters with, such legal counsel, experts, consultants, and advisers as the Committee shall deem necessary or desirable in order to assist it in the discharge of its responsibilities.

(e)    **Other Actions**.  Perform any other activities consistent with this Charter, the Company's Bylaws and governing law as the Committee or the Board deems necessary or appropriate.

4.    **Actions by Written Consent**.  Actions by written consent of the Committee will be kept with the regular corporate records of the Company.

5.    **Reliance**.  In carrying out its duties, the Committee shall be entitled to act in reliance on the Company's management, accountants, counsel, internal auditors, and outside advisors and experts, to the extent the Committee deems necessary or appropriate.

6.    **Investigations and Experts**.  As and to the extent the Committee deems necessary or appropriate in fulfilling its duties, the Committee shall have the authority to conduct, at the Company's expense, any investigations or studies of matters within the Committee's scope of responsibilities and to retain, at the Company's expense, and obtain advice and assistance from, external experts, consultants and advisors, including but not limited to investment banks and counsel selected by the Committee.

7.    **Required Participation of Employees**.  The Committee shall have unrestricted access to the Company's employees, accountants, internal auditors, internal and outside counsel, outside advisors and experts and anyone else employed or retained by the Company, and may require any such persons to meet with the Committee or any of its consultants or advisors.

8.    **Dissolution of Committee**.  The sole member of the Committee shall serve the Company until a successor shall be appointed or until the Committee shall be disbanded, in either case by resolution of the Board.

9.    **Reports to the Board.**  The Committee shall report its findings and conclusions to the Board in a manner and at such times as counsel to the Committee shall determine is consistent with the independence of and charge to the Committee.

10.    **Indemnification.**  The Company shall indemnify the Committee, and advance all legal fees and costs, to the extent permitted by applicable law and the Certificate of Incorporation and Bylaws of the Company, with respect to any claims asserted against it or its member arising out of its discharge of the duties set forth in this resolution, including the preparation and dissemination of its report of its independent review and investigation.