# EXHIBIT 17

# TO WITTSTEIN AFFIDAVIT



**RANDALL & DEWEY**
A division of Jefferies

**Randall & Dewey**
Three Allen Center
333 Clay Street, Suite 1000
Houston  TX 77002
tel  281 774 2000
fax  281 774 2050
www.randow.com

A division of Jefferies & Company, Inc

October 27, 2005

**SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
DAVIS PETROLEUM CORP.**

DAVIS PETROLEUM CORP.
1360 Post Oak Blvd.
Houston, Texas  77056

Attention:  Daniel E. Armel

Ladies and Gentlemen:

Pursuant to the letter of engagement dated June 16, 2005, Jefferies & Company, Inc. is respectfully resigning the engagement as financial advisor to the Special Committee. It has been our pleasure to act in this capacity thus far, but regretfully we can no longer serve the Committee in this role. We greatly appreciate the opportunity and would very much like to be considered for future engagements.

Sincerely,

JEFFERIES & COMPANY, INC.

By
Name:  J. David Lucke
Title:   Managing Director

# EXHIBIT 18

# TO WITTSTEIN AFFIDAVIT

# EVERCORE PARTNERS

WILLIAM O. HILTZ

Daniel Armel
October 21, 2005
Page 1 of 2

October 21, 2005

Daniel Armel
1270 Glen Oaks Boulevard
Pasadena, CA 91105-1154

Dear Dan,

Evercore continues to be impressed with Davis Petroleum and the progress it has made since we first met the Company over a year and a half ago, and we remain enthusiastic about the opportunity to invest in the Company. On September 13, 2005, we submitted to the Company a detailed term sheet (the "Proposal") outlining the terms on which Evercore Capital Partners II L.P. ("Evercore" or "ECP") would be prepared to invest in Davis Petroleum Corp. ("DPC" or the "Company"). After receiving your feedback about the shareholders' requirements for an acceptable deal, we are now writing to you to revise our Proposal to increase the amount of stock held by the Davis Family Trusts (other than the Gregg J. Davis Trust) that we are willing to purchase from 50% up to 100%.

We are assuming a pre-money equity valuation $85 million. This pre-money equity valuation is based on a Total Enterprise Valuation of the Company of $147.9 million, which assumes a projected net debt balance of $62.9 million as of October 31, 2005. The pre-money Total Enterprise Value will be adjusted as necessary at closing for any changes in cash, working capital and debt balances which are incurred as a result of budgeted capital expenditures or operating losses. To the extent that such changes in cash, working capital or debt are incurred as a result of cost overruns, the pre-money Total Enterprise Value will be held constant and the changes will be accounted for in the pre-money equity valuation.

If the Davis Family Trusts (other than the Gregg J. Davis Trust) sell 100% of their stock, they will receive $77.5 million in cash upon the closing of the transaction, assuming the pre-money equity valuation set forth in the preceding paragraph. To the extent that certain Davis Family members would like to sell less than 100% of their holdings, we are willing to accommodate them in this transaction.

Daniel Armel
October 21, 2005
Page 2 of 2

We are prepared to commit $147.5 million to the investment, representing a primary equity investment of $70 million in the Company, and up to $77.5 million to purchase up to 100% of the stock held by the Davis Family Trusts (other than the Gregg J. Davis Trust.) We intend to partner in this transaction with Sankaty Advisors, LLC and Red Mountain Capital Partners, although our offer is not contingent on their participation.

Based on our revised Proposal, we would like to enter into a sixty day exclusivity period with the Company. If granted exclusivity, we would work expeditiously with the Company to execute definite documentation and close the transaction. Rapid execution is critical to DPC, as the Company is facing substantial near term capital expenditures and is currently in breach of its senior and subordinated debt covenants. Evercore's equity investment would provide the necessary capital expenditure funding and cure the covenant breaches. Additionally, Evercore has extensive experience and relationships with debt providers, including DPC's current lenders, and we would work closely with the senior and subordinated lenders to restructure the debt facility going forward to give the Company needed financial and operating flexibility.

We believe that the Company has reached a point with its lenders where any further delay in consummating a transaction poses a significant risk to the value of the Company and its prospects. For this reason, our offer will expire at 5:00 p.m. EST on October 26, 2005, unless we enter into an Exclusivity Agreement prior to that time.

Please contact me if you require any clarification or have any questions regarding this letter. I can be reached at 212-857-3154. We look forward to working with you to build the value of Davis Petroleum.

Sincerely,

William O. Hiltz
Senior Managing Director

cc: Gregg J. Davis
    Austin M. Beutner
    Ciara A. Burnham
    Mayer Bick

## SUMMARY OF PROPOSED TERMS
## FOR A PRIVATE EQUITY INVESTMENT IN DAVIS PETROLEUM

*This Term Sheet is intended as a summary only and does not reference all of the terms, conditions, representations, warranties, covenants and other provisions, which will be contained in the definitive documentation for the transactions contemplated hereby. It also does not include descriptions of all of the terms, conditions, other structural elements or regulatory approvals that may be necessary or will be provided for in the definitive documentation relating to the proposed transaction. The ultimate legal structure will be determined with the advice of legal and tax counsel and the agreement of the parties hereto, and the terms contained in this Term Sheet will be modified to reflect any such revised structure and other legal and tax considerations. This Term Sheet is intended solely as a basis for further discussions between the parties and, except as expressly provided herein, is not intended to be and does not constitute a legally binding obligation.*

## I. GENERAL

**Acquiring Shareholder:** Davis Petroleum Acquisition Corp. ("DPAC"), an entity formed by Gregg Davis ("GJD") to raise new equity for (and to acquire existing equity interests in) Davis Petroleum Corporation, Davis Offshore Management LLC, Davis Offshore Holding LLC and Davis Pipeline LLC (collectively, the "DP Affiliates") from the Davis Family Trusts. The common equity of DPAC (the "DPAC Common Stock") will be initially owned by GJD and certain members of Davis Petroleum management (collectively, the "Management").

**Selling Shareholders:** The Davis Family Trusts currently own 100% of the equity interests in the DP Affiliates. The Davis Family Trusts will combine the DP Affiliates under a new tax consolidating holding company ("Davis Petroleum") and will thereafter own 100% of the common stock of Davis Petroleum (the "DP Common Stock"). The Davis Family Trusts other than the Gregg J. Davis Trust may, but are under no obligation to, cause Davis Petroleum to redeem up to 100% of the DP Common Stock owned by them at a per share price based on the Pre-Money Valuation (as defined below). The Gregg J. Davis Trust will not cause any of its shares to be redeemed and will own [8.8%] of the DP Common Stock.

**Private Equity Investors:** Evercore Capital Partners II L.P. and its affiliates or designees ("Evercore").

**Pre-Money Valuation:**

The pre-money common equity value of Davis Petroleum is assumed to be $85.0 million (the "Pre-Money Valuation"), based a pre-money enterprise value of Davis Petroleum of $147.9 million and the calculations outlined in Exhibit A to this Term Sheet. The pre-money enterprise value will be adjusted as necessary at closing for any changes in cash, working capital and debt balances which are incurred as a result of budgeted capital expenditures or operating losses. To the extent that changes in cash, working capital or debt are incurred as a result of cost overruns, the pre-money enterprise value will be held constant and the changes will be accounted for in the pre-money equity value. The operations of the business to be acquired will be conducted in the ordinary course of business.

**Post-Money Valuation:**

The post-money common equity valuation of Davis Petroleum is assumed to be $155.0 million (the "Post-Money Valuation) based on the $70.0 million primary equity commitment described below and the Pre-Money Valuation.

**Proposed Transaction:**

The consequences of the transaction on the Davis Family Trusts will depend on whether those trusts (other than the Gregg J. Davis Trust) sell (i) 100% of their interests in a transaction, or (ii) less than 100% of their interests.

*(I.) Sale of 100% of the Davis Family Trust Interests (excluding the Gregg J. Davis Trust):* Assuming the $85 million pre-money equity valuation, selling shareholders will receive $77.5 million in cash upon closing.

*(II.) Sale of less than 100% of the Davis Family Interests (excluding the Gregg J. Davis Trust):* Evercore will commit to purchase newly issued preferred stock of DPAC with detachable warrants (collectively, the "DPAC Preferred Stock") exercisable into 90% of the fully diluted equity of DPAC (before any additional stock of DPAC is issued for the purposes described below) for $70 million in cash. The stated value of each share of preferred stock of DPAC will be equal to the fully-diluted per share Post-Money Valuation. DPAC will use the proceeds of the DPAC Preferred Stock to purchase $70 million of newly issued preferred stock of Davis Petroleum with detachable warrants (collectively, the "DP Preferred Stock")

exercisable into 45.16% of the fully diluted equity of Davis Petroleum at the Post-Money Valuation. The stated value of each share of preferred stock of Davis Petroleum will be equal to the fully-diluted per share Post-Money Valuation.

Davis Petroleum will use the proceeds of the issuance of DP Preferred Stock to retire the Sankaty Bridge Facility and to fund working capital and capital expenditures.

Davis Petroleum will offer the Davis Family Trusts other than the Gregg J. Davis Trust the opportunity at closing to cause Davis Petroleum to redeem up to 100% of the DP Common Stock owned by them at a per share price based on the Pre-Money Valuation. Evercore will purchase additional DPAC Preferred Stock the proceeds of which will be used to purchase additional DP Preferred Stock to fund such redemption.

## II.   TERMS RELEVANT TO ONGOING SHAREHOLDERS OF DAVIS PETROLEUM

### A. Primary Equity Commitment

If the closing occurs, Evercore will be contractually committed to purchase $70 million of newly issued DPAC Preferred Stock, and Davis Petroleum will be contractually committed to issue $70 million of newly issued DP Preferred Stock to DPAC at the Post-Money Valuation. The $70 million primary equity commitment may be drawn down in staggered tranches during the first 18 months following closing. Such drawdowns can take place at any time with majority approval of the Board, in amounts of no less than $15 million each time, until 18 months after closing.

If and to the extent that all of the $70 million primary equity commitment has not been drawn down 18 months after closing or prior to a material event (which includes but is not limited to a change of control, an equity issuance, an asset divestiture in excess of $500,000 or a payment of extraordinary dividends), Evercore will purchase the balance of the DPAC Preferred Stock (and DPAC will purchase the balance of the related DP Preferred Stock) on

the earlier of (i) 18 months after closing or (ii) the day on which the material event occurs.

## B.  Preferences and Distributions

**Preferred Dividends:**

Each of the DPAC Preferred Stock and the DP Preferred Stock will earn a cumulative dividend at a compound rate of 8% per annum (the "Preferred Return").  Preferred dividends will be payable semi-annually in cash or in kind, at the election of the Board.

**Common Dividends:**

Dividends on DP Common Stock will be paid at the election of a majority of the Board and, in any event, only after all accrued and unpaid dividends on DP Preferred Stock have been paid.

Dividends on DPAC Common Stock will be paid at the election of the Board and, in any event, only after all accrued and unpaid dividends on DPAC Preferred Stock have been paid in full, but will benefit from a "catch-up," the mechanics of which are described as follows:

Following the time at which the DPAC Preferred Stock has received cumulative distributions equal to the Preferred Return, all other distributions shall be made as follows:

- Distributions shall be made 50/50 to the DPAC Common Stock and the DPAC Preferred Stock until the DPAC Common Stock has received cumulative distributions equal to the DPAC Common Stock's pro rata share (based on ownership percentage of the full-diluted equity of DPAC on an as-exercised basis) of all distributions made by DPAC including the Preferred Return; and

- Thereafter, distributions shall be made to the DPAC Common Stock and the DPAC Preferred Stock on a pro rata basis (based on ownership percentage of the fully-diluted equity of DPAC on an as-exercised basis).

**Redemption Provisions:**

The DPAC Preferred Stock and the DP Preferred Stock will have no term (*i.e.*, will not be subject to a mandatory redemption obligation).  The DPAC Preferred Stock and

the DP Preferred Stock may be redeemed at any time by a majority approval of the Board.

**Warrants:**

Each warrant associated with the DPAC Preferred Stock will be exercisable into one share of DPAC Common Stock and may be exercised at any time, at the holder's option, as follows:

- A warrant may be exercised by surrendering the warrant and cash equal to the exercise price of the warrant;

- A warrant may be exercised on a cashless basis by surrendering the warrant and one share of DPAC preferred stock; and/or

- In the event the DPAC preferred stock has been redeemed, a warrant may be exercised on a cashless basis by surrendering the warrant and reducing the number of shares of DPAC Common Stock issuable upon exercise of such warrant by such number of shares of DPAC Common Stock with a value equal to the exercise price of the warrant (for this purpose, the value of the DPAC Common Stock will be based on a report by a third party appraisal firm or, if Davis Petroleum is a public company, the value of its publicly traded shares).

The exercise terms of the warrants associated with the DP Preferred Stock will be parallel to the terms associated with the warrants associated with the DPAC Preferred Stock.

**Liquidation Preference and Distributions:**

Upon liquidation, merger, sale of assets, recapitalization, reorganization or any other similar exit event with respect to Davis Petroleum that generates cash available for distribution to equity holders, the DP Preferred Stock will be entitled to receive a payment equivalent to its stated value, plus any and all accrued and unpaid dividends, in preference to the DP Common Stock. Thereafter, the DP Preferred Stock and the DP Common Stock will be entitled to receive the remainder of such liquidating distribution on a pro rata basis (based on ownership percentage of the fully-diluted equity of DP on an as-exercised basis).

Upon liquidation, merger, sale of assets, recapitalization, reorganization or any other similar exit event with respect to DPAC that generates cash available for distribution to equity holders, the DPAC Preferred Stock will be entitled to receive a payment equivalent to its stated value, plus any and all accrued and unpaid dividends, in preference to the DPAC Common Stock. Thereafter, the DPAC Preferred Stock and the DPAC Common Stock will be entitled to receive the remainder of such liquidating distribution on a pro rata basis (based on ownership percentage of the fully-diluted equity of DPAC on an as-exercised basis, subject to the catch up described in the Common Dividends section of this Term Sheet).

## C. Governance

**DPAC Board:**

The primary governing body of DPAC will be its Board of Directors, which will be controlled by Evercore.

**Davis Petroleum Board:**

The primary governing body of Davis Petroleum will be the Board of Directors (the "Board"). The Board will consist of seven directors, with each director entitled to one vote. DPAC will have the right to appoint four directors. GJD, George Canjar and a representative of the Davis Family Trusts (as long as the Davis Family Trusts, excluding the Gregg J. Davis Trust, own at least 10% of the fully diluted common equity interests in Davis Petroleum on an exercised basis) will also serve as directors.

**Day-to-Day
Management and
Board Approvals:**

The Management will manage the business of Davis Petroleum on a day-to-day basis and will report to the Board at regularly scheduled meetings and more often as appropriate. At closing, the operating budget and exploration and capital expenditures budget for the balance of Davis Petroleum's fiscal year will be approved by a majority of the Board.

Notwithstanding the above, the following operating activities will require prior approval by a majority vote of the Board:

- The annual operating budget and the exploration and capital expenditures budget;
- Changes in the annual operating budget in excess of $1 million;
- Exploration or other capital expenditures outside the approved budget and in excess of $1 million;
- Borrowings outside the approved budget and in excess of $1 million;
- Acquisitions, divestitures and investments in excess of $1 million; and
- Selection of auditors.

The following actions may be caused by, and may be taken following approval by a majority vote of, the Board:

- Oil and gas hedging in notional amounts in excess of $1 million;
- Dividends, distributions, stock redemptions and stock repurchases;
- Sale of the Company, or sale of all or part of the assets of the Company
- Hiring, termination with or without cause and changes in compensation for the CEO;
- Changes in or additions to the management incentive plan; provided, however, that the plan outlined in this Term Sheet cannot be diminished;
- Changes to the size of the Board and replacement of departing directors; provided, however, that the proportional representation outlined in this Term Sheet remains the same;
- Issuances of equity;
- Initiation or settlement of significant litigation.

|  |  |
|---|---|
| **Transfer Restrictions:** | All transfers of DP Common Stock and DPAC Common Stock, except for intra-family or inter-trust transfers, prior to the third anniversary of closing will require the approval of a majority of the Board. |
| **Tag-Along Rights:** | Each shareholder (or its affiliates) in Davis Petroleum and DPAC will have a tag-along right with respect to any transfers by any other shareholder in Davis Petroleum or DPAC, as the case may be, on a pro rata basis. |

**Drag-Along Rights:** In the event of a Board-approved sale of more than 50% of Davis Petroleum, a majority of the Board can cause all owners of equity interests in Davis Petroleum to be dragged along in the sale on a pro-rata basis. Similarly, in the event of a Board-approved sale of more than 50% of DPAC, a majority of the DPAC Board can cause all owners of equity interests in DPAC to be dragged along in the sale on a pro-rata basis.

**Registration Rights:** Standard registration rights will be granted to all shareholders upon an initial public offering.

## D. Management Arrangements

**Management Incentives:** The Management will be granted options to purchase up to an aggregate of 10% of Davis Petroleum's fully diluted common equity interests outstanding (the "Management Options"),

- 5% of which will be granted with strike prices equal to the Post-Money Valuation on a fully-diluted per share basis; and
- 5% of which will be granted with strike prices equal to 2.5x the Post-Money Valuation on a fully-diluted per share basis.

20% of the Management Options will vest on closing of the transaction and an additional 20% will vest on each of the four anniversaries after closing.

Vesting of the Management Options will accelerate upon a change of control of Davis Petroleum. In the event of an initial public offering prior to the fourth anniversary of closing, the Management Options will continue to vest on their original schedule; however, the Board will approve a new management incentive program in line with programs typical for public companies.

In the event a Management executive is terminated without cause or departs voluntarily, he or she will retain all vested Management Options, subject to compliance with non-competition and non-solicitation obligations and subject to any rights of acceleration contained in the termination and severance provisions of his or her employment agreement

and subject to Davis Petroleum's right to repurchase such options at fair value.  In the event a Management executive is terminated with cause, he or she will forego all vested and unvested Management Options.

The term of the Management Options will be ten years.

### E.  Evercore Arrangements

**Expenses:**

Evercore will receive a monitoring fee of $250,000 annually, and an expense reimbursement fee of $75,000 per year plus any out-of-pocket legal expenses they incur to cover ongoing monitoring expenses.  Fees and expense reimbursements will be payable on a quarterly basis.

**Director Fees:**

To the extent any directors are compensated for their services, the Evercore directors will be entitled to the same compensation.  The Management directors will not be compensated for their service on the Board.

### III.  OTHER PROVISIONS

**Expenses:**

Upon closing, Evercore and the Management will be reimbursed by Davis Petroleum for all of their out-of-pocket fees and expenses incurred in connection with due diligence and preparation of definitive documentation for the transaction.

**Exclusivity:**

Upon initial agreement to the terms set forth in this Term Sheet, the Davis Family Trusts will enter into a Letter of Intent with Evercore and the Management and will work exclusively with Evercore and the Management for [three months] in order to execute the Proposed Transaction.

**Due Diligence:**

The consummation of the Proposed Transaction will be subject to due diligence by Evercore, including but not limited to a review of Davis Petroleum's existing oil and gas reserves and future prospects, financial statements, environmental liabilities, accounting records, legal due diligence and continued business due diligence.

**Confidentiality:**

The existence of this Term Sheet and the terms contained herein shall be subject to a Confidentiality Agreement

among Evercore, the Management and the Davis Family Trusts.

**Non-Binding:**   This Term Sheet is for discussion purposes only and nothing contained herein, except the clauses relating to Confidentiality and Exclusivity (which will be documented in a Confidentiality Agreement and a Letter of Intent), creates any liability or any obligation on any party.

## EXHIBIT A

| | |
|---|---|
| **Pre-Money Enterprise Value:** | $147,881,034 |
| **Less:** | |
| **Bank of America Senior Debt:** | 20,000,000 |
| **Sankaty Subordinated Debt (optional redemption value\*):** | 22,556,240 |
| **Sankaty Bridge Debt (payoff value):** | 20,324,794 |
| **Pre-Money Equity Valuation:** | $85,000,000 |
| **Plus:** | |
| **Primary Equity Commitment:** | 70,000,000 |
| **Post-Money Equity Valuation:** | $155,000,000 |

\*Redemption Value based on earliest allowable redemption of sub-debt (8/27/06) and a 10% cost of borrowing

# EXHIBIT 19

# TO WITTSTEIN AFFIDAVIT

# [See Adv. Proc. Docket No. 4 at Ex. B]

# EXHIBIT 20

# TO WITTSTEIN AFFIDAVIT

PURCHASE AND SALE AGREEMENT

by and among

DAVIS PETROLEUM ACQUISITION CORP.,

and

DAVIS OFFSHORE PARTNERS LLC,

as BUYERS

and

DAVIS PETROLEUM CORP.

DAVIS OFFSHORE, L.P.,

and

DAVIS PETROLEUM PIPELINE LLC,

as COMPANIES

Dated as of March 7, 2006

HOU:6541269

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "*Agreement*") is made as of March 7, 2006, by and among Davis Petroleum Acquisition Corp., a Delaware corporation ("*DPAC*"), Davis Offshore Partners LLC, a Delaware limited liability company ("*Davis Partners*"), Davis Petroleum Corp., a Delaware corporation ("*DPC*"), Davis Offshore LP, a Texas limited partnership ("*Davis Offshore*"), and Davis Petroleum Pipeline LLC, a Delaware limited liability company ("*Davis Pipeline*"). Each of DPC, Davis Offshore and Davis Pipeline is a "*Company*," and DPC, Davis Offshore and Davis Pipeline are collectively referred to as the "*Companies*." Each of DPAC and Davis Partners is a "*Buyer*," and DPAC and Davis Partners are collectively referred to as the "*Buyers*."

A.  Certain capitalized terms used but not defined elsewhere in the text of this Agreement are defined in Article I.

B.  If on or prior to March 7, 2006 (the "*Petition Date*"), the Companies' proposed chapter 11 plan has been accepted by the classes of interests that are impaired thereunder, the Companies intend to (i) file petitions for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "*Bankruptcy Court*") and (ii) seek confirmation of the Plan at a hearing to be held on March 9, 2006. A copy of the Companies' proposed chapter 11 plan is attached hereto as Exhibit A (together with amendments and supplements acceptable to Buyers and confirmed by the Bankruptcy Court, herein the "*Plan*")

C.  On the effective date of the Plan, all of the existing capital stock, partnership interests and membership interests in the Companies will be cancelled and each of the New Companies shall be authorized to issue capital stock, partnership interests and membership interests to the Buyers.

D.  The Buyers desire to purchase, such newly issued capital stock, partnership interests and membership interests in the New Companies, all pursuant to the Plan and on the terms and subject to the conditions set forth in this Agreement.

Now therefore, for good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

## I. DEFINITIONS; CERTAIN INTERPRETIVE MATTERS

1.1  Definitions. In addition to the terms defined elsewhere herein, the following terms have the following meanings when used herein with initial capital letters:

"*AAA*": as set forth in Section 11.14.

"*Actual Closing Balance Sheet*" as set forth in Section 2.4(d).

"*Accounts Receivable*": as set forth in Section 4.23.

HUI-6541269

03/01/2005   04:59    912128573152              EVERCORE                    PAGE   02/11

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

DAVIS PETROLEUM ACQUISITION
CORP., a Delaware corporation

By: _____
Ciara Burnham
President

Address for Notices:

c/o Evercore Capital Partners
11111 Santa Monica Boulevard
Los Angeles, CA  90025
Attention:  Mayer Bick

with a copy to:

c/o Evercore Partners
55 East 52nd Street
New York, NY  10055
Attention:  Puneet Gulati

and:

Jones Day
717 Texas Avenue, Suite 3300
Houston, TX  77002
Attention:  Jeff Schlegel

*Contribution and Sale Agreement*

**DAVIS OFFSHORE PARTNERS LLC, a
Delaware limited liability company**

By:  Davis Petroleum Acquisition Corp., its
managing member

By: _____
Ciara Burnham
President

Address for Notices:

c/o Evercore Capital Partners
11111 Santa Monica Boulevard
Los Angeles, CA  90025
Attention: Mayer Bick

with a copy to:

c/o Evercore Partners
55 East 52nd Street
New York, NY  10055
Attention:  Puneet Gulati

and:

Jones Day
717 Texas Avenue, Suite 3300
Houston, TX  77002
Attention:  Jeff Schlegel

*Contribution and Sale Agreement*

**DAVIS PETROLEUM PIPELINE LLC, a**
**Delaware limited liability company**

By: _____
Name: _Gregg Davis_____
Title: _____President_____

Address for Notices:

1360 Post Oak Blvd.
Suite 2400
Houston TX 77056

with a copy to:

Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX  77002
Attention:  Rhett G. Campbell

**DAVIS PETROLEUM CORP. a Delaware corporation**

By: _____

Name: _____

Title: _____

Address for Notices:

1360 Post Oak Blvd.
Suite 2400
Houston TX 77056

with a copy to :

Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX  77002
Attention:  Rhett G. Campbell

**DAVIS OFFSHORE, L.P., a Texas limited partnership**

By: _____

Name: _Gregg Davis_____

Title: _____President_____

Address for Notices:

1360 Post Oak Blvd.
Suite 2400
Houston TX 77056

with a copy to :

Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX  77002
Attention:  Rhett G. Campbell

# EXHIBIT 21

# TO WITTSTEIN AFFIDAVIT

----- Message from "Hardy, Jack" <JHardy@OMM.com> on Tue, 31 Jan 2006 09:00:11 -0700 -----
"Anne Uyeda" <a.uyeda@mpglaw.com>, "Brad Ruskin" <bruskin@proskauer.com>, "David Shapiro"
<dshapiro@bsfllp.com>, "Ed Landry" <e.landry@mpglaw.com>, "Eric Waxman" <ewaxman@skadden.com>,
"Feinstein, Marc" <MFeinstein@OMM.com>, "Fred Norton" <fnorton@bsfllp.com>, "Geoffrey Brown"
<g.brown@mpglaw.com>, "Hardy, Jack" <JHardy@OMM.com>, "Jerry Coben" <jcoben@skadden.com>, "Jon
Koslow" <jkoslow@skadden.com>, "Kevin Leichter" <kleichter@chrismill.com>, "Larry Budish"
<lbudish@proskauer.com>, "Larry Rothenberg" <lrothenberg@proskauer.com>, "Michael Pierce"
<michael.pierce@tklaw.com>, "Mike Diamond" <mdiamond@milbank.com>, "Motley, John-Paul"
<JPMotley@OMM.com>, "Rich Levin" <rlevin@skadden.com>, "Richard Baker" <rbaker@milbank.com>, "Scott
Cooper" <scooper@proskauer.com>, "Skip Miller" <smiller@chrismill.com>, "Susan Marcella"
<smarcella@gibsondunn.com>, "Tom Holliday" <tholliday@gibsondunn.com>, "White, Robert"
<RWhite@OMM.com>, "Ying, P. Yvonne" <YYing@OMM.com>
"Armeld" <Armeld@aol.com>


Davis Petroleum: Schedules to Sale Agreement


Attached are current versions of the schedules to the sale agreement, not including some 400+ pages of
details with respect to the wells and well related equipment. Copies of those schedules will be available
at the closing or I can send them to you if you request them. These may change as we approach signing
and closing. Thanks.

**Jack Hardy**

**O'Melveny & Myers LLP**

400 South Hope Street

Los Angeles, California 90071

(213) 430-6393 Direct

(213) 430-6407 Fax

jhardy@omm.com

*This message and any attached documents contain information from the law firm*

*of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are*

*not the intended recipient, you may not read, copy, distribute, or use this*

*information. If you have received this transmission in error, please notify the*

*sender immediately by reply e-mail and then delete this message.*

---

**From:**  Ying, P. Yvonne

**Sent:**  Monday, January 30, 2006 11:27 PM

**To:**  Aaron C Gard; Amberley Goodchild; jaschlegel@jonesday.com; markmetts@jonesday.com

**Cc:**  Hardy, Jack; Motley, John-Paul; 'armeld@aol.com'; Drulias, Grace

**Subject:**   Revised Schedules

All,

Attached are the revised Schedules to the Contribution Agreement (a clean copy, a blackline and a PDF of the changed pages are included for your convenience).  Please note that the schedules are being reviewed by the company and we expect to send another draft to you tomorrow.

<<schedule- changed pages.pdf>> <<Schedules to Contribution Agreement.doc>> <<Blackline-Schedules to Contribution Agreement.doc>>

Best regards,

**P. Yvonne Ying**

O'Melveny & Myers LLP

400 South Hope Street

Los Angeles, CA 90071-2899

Phone: (213) 430-6378

Fax: (213) 430-6407

Email: yying@omm.com

* * * *

IRS Circular 230 Disclosure

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.

\* \* \* \*

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

          

schedule- changed pages.pdf   Schedules to Contribution Agreement.doc   Blackline- Schedules to Contribution Agreement.doc

# EXHIBIT 22

# TO WITTSTEIN AFFIDAVIT

# [See Docket No. 17 at Ex. 12]

# EXHIBIT 23

# TO WITTSTEIN AFFIDAVIT



**Davis Petroleum Corp.**

# Davis Petroleum Reaches Agreement with Evercore Capital Partners To Ensure Ample Funds for Continuing Growth and Successful Exploration

## Evercore Will Obtain Majority of Equity in Davis Petroleum; Current Management Will Retain Equity Interest

## Transaction to Be Facilitated Through Prepackaged Chapter 11 Filing; All Creditors Will Be Paid in Full

**Los Angeles and Houston (March 8, 2006) – Davis Petroleum Corp.** ("Davis") today announced that it has reached an agreement with a private equity group led by Evercore Capital Partners L.P ("ECP") to recapitalize the Company. The agreement will provide Davis with ample capital resources to continue its successful oil exploration and production (E&P) business.

Under the terms of the agreement, the private equity group led by ECP and management of the Company will purchase all of the equity of Davis Petroleum, Davis Offshore and Davis Pipeline, which comprise Davis Petroleum Corp., for approximately $150 million.   The private equity group includes Red Mountain Capital Partners and Sankaty Advisors, an affiliate of Bain Capital.

After the transaction is completed, the three Davis companies will continue to operate with the same corporate names and management teams.  John T. Dillon, Evercore Vice Chairman and former Chief Executive Officer and Chairman of International Paper, will join Davis' Board. James R. Montague, former head of International Paper's oil and gas business, will become non-Executive Chairman of Davis.

To facilitate the transaction, Davis has filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code, along with a prepackaged plan of reorganization providing for the company's emergence from Chapter 11. While a sale of the company outside of Chapter 11 requires 100% shareholder approval, only two-thirds shareholder approval is needed in a Chapter 11.  The plan of reorganization has received the support of the required number of Davis shareholders. The Company has requested that a hearing to confirm the plan be set for March 9, 2006.

"We are pleased to have Evercore, Red Mountain and Sankaty as our partners going forward.  The new capital will allow our premier teams of oil and gas professionals to expand our reserves across areas of operation, and Evercore's involvement will enable us to strengthen our position as one of the most innovative oil and gas E&P companies in the U.S," said Gregg Davis, President and C.E.O.of Davis.

"Davis Petroleum has a storied history and a proven management team that, with the

right capital structure in place, will enable the Company to continue its success in the exploration, discovery and development of its onshore properties as well as bring into production its recent offshore finds in the Gulf of Mexico," said Austin Beutner, Co-Chief Executive Officer of Evercore. "ECP has made a number of successful energy investments, particularly in the oil and gas E&P sector. We look forward to applying our expertise and insight to help Gregg and his team build on Davis Petroleum's success and capitalize on the exciting growth opportunities before it."

"This transaction structure is the best alternative available to Davis Petroleum," Mr. Davis said. "Upon completion of the recapitalization process in just a few weeks, all creditors will be paid in full, we will have a strong balance sheet, and ample liquidity to complete development of our Gulf of Mexico projects and continue growth in our onshore regions of operation." He noted that as a part of the agreement, ECP has committed to infuse additional capital into the Company going forward.

Mr. Davis emphasized that Davis's employees, suppliers, drilling partners, and customers should not notice any difference in operation during the recapitalization process, which is expected to be completed in just a few weeks.

The Company filed its voluntary Chapter 11 petitions and plan of reorganization in the U.S. Bankruptcy Court for the Southern District of Texas, Corpus Christi Division.

**About Davis Petroleum Corp.**

Founded by Jack Davis in the 1940s, Davis Petroleum Corp. is an oil and gas E&P company operating in the onshore and intermediate-deep water Gulf of Mexico, Texas, Louisiana, Oklahoma and the Rocky Mountain region. Davis utilizes teams of geologists, geophysicists, landmen, and engineers to develop, drill and discover new oil and gas fields. Davis typically partners with other oil and gas companies, and retains a working interest. This business model allows Davis to focus on its core strength of prospect generation. The company is headquartered in Houston, with offices in Denver. More information about Davis is available on the Company's Web site at www.davispetroleumcorp.com.

**About Evercore Partners**

Evercore Partners Inc. is a boutique financial advisory and investment firm. Evercore's advisory business provides its corporate clients with counsel on mergers, acquisitions, divestitures, restructurings and other strategic transactions. Evercore's investing business manages private equity and venture capital for institutional investors. Evercore's private equity investing arm, Evercore Capital Partners, has invested in a number of energy companies, including Michigan Electric Transmission Company, Continental Energy Services, and Energy Partners. Evercore recently extended its investing business to create Evercore Asset Management, an institutional asset management firm. Evercore serves a diverse set of clients around the world from its offices in New York, Los Angeles and San Francisco. For more information on Evercore, please visit www.evercore.com.

**About Red Mountain Capital Partners**

Red Mountain Capital Partners, headquartered in Los Angeles, is a private investment firm dedicated to investing in small capitalization public and private companies with a private equity approach.  Red Mountain acquires strategic or control stakes in public companies and participates in negotiated private equity transactions on a selected basis.  The firm was established by Willem Mesdag, a former partner of Goldman, Sachs & Co and the head of its Los Angeles office.

**About Sankaty Advisors**

Sankaty Advisors, LLC, the credit affiliate of Bain Capital, LLC, is one of the nation's leading private managers of high yield debt obligations. With approximately $12 billion in committed capital (as of December 30, 2005), Sankaty invests in a wide variety of securities, including leveraged loans, high-yield bonds, stressed debt, distressed debt, mezzanine debt, structured products and equity investments. Through a variety of funds, Sankaty Advisors has the ability to invest in a company's capital structure at every level from secured debt to equity, and can also provide capital to growing companies with unique financing needs.

# # #

Contact information:

For Davis Petroleum Corp.:
Lewis M. Phelps, (310) 890-7369 (cell)
(713) 626-7766 (landline) OR
Maya Pogoda (310) 283-1325 (cell)
Sitrick And Company

For Evercore Capital Partners:
Chuck Dohrenwend or
          Kenny Juarez
The Abernathy MacGregor Group
(212) 371-5999

# EXHIBIT 24

# TO WITTSTEIN AFFIDAVIT

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DAVIS PETROLEUM CORPORATION,** | § | CASE NO. _____ |
| | § | |
| **DAVIS OFFSHORE, L.P. and** | § | CASE NO. _____ |
| | § | |
| **DAVIS PETROLEUM PIPELINE LLC,** | § | CASE NO. _____ |
| | § | |
| **DEBTORS.** | § | **JOINTLY ADMINISTERED** |
| | § | **UNDER CASE NO. _____** |

## PROFFER OF TESTIMONY OF ALBERT CONLY IN SUPPORT OF CONFIRMATION OF PLAN UNDER 11 USC SECTION 1129

**EXHIBIT**

**13**

If called to testify, Albert Conly would testify as follows:

My name is Albert Conly.  I am a Senior Managing Director with FTI Consulting, Inc. in the corporate reorganization practice.  Attached is a true and correct copy of my curricula vita.

On February 14, 2006, I was retained by Davis Petroleum Corporation, Davis Offshore, L.P., and Davis Petroleum Pipeline LLC (collectively referred to herein as "Debtors") to provide financial consulting and advisory services in connection with a recapitalization and possible Chapter 11 bankruptcy case.

In the course of my duties as financial advisor, I have had occasion to examine the books and records of the Debtors and analyze the Debtors' assets, reserve reports, liabilities, cash flow needs, weekly and monthly expenditures, and related financial information.  I also had extensive discussions with Debtors' senior management.  In connection with the plan and recapitalization transaction with Evercore Capital Partners II, LP ("Evercore"), I analyzed the purchase price which will be generated by the transaction and estimated the distributions to creditors under the plan and the equity holders of the Debtors.  I also analyzed the assets and liabilities for purposes of preparation of an asset evaluation summary for the plan.

I caused to be prepared under my direction Exhibit 2 to the Disclosure Statement, which is the Summary of the Assets of the Debtors.  To prepare this exhibit, we reviewed the book values of the oil and gas, cash and personal property assets of the Debtors.  As set forth in the chart, we concluded that the estimated book value of the assets of the Debtors as of February 24, 2006 is $93,770,634.

I caused to be prepared under my direction <u>Exhibit 4</u> to the Disclosure Statement, which is the Liquidation Analysis. We assumed two cases, a high and a low estimate of value. We concluded and <u>Exhibit 4</u> demonstrates that in the low case, unsecured creditors and equity holders are not expected to receive anything from a liquidation of assets. In the high case, unsecured creditors are expected to receive approximately $500,000 to be shared among an estimated $21.6 million of claims. In the high case, secured creditors are expected to be paid in full; in the low case, only Bank of America is expected to be paid in full, and the second lienholder is not expected to be paid in full, receiving estimated proceeds of $34 million towards payment of $44 million of debt.

We prepared an analysis of the proposed Evercore transaction, and it is <u>Exhibit 11</u> to the Disclosure Statement. <u>Exhibit 11</u> shows that all creditor classes can be paid in full from the transaction proceeds, leaving an estimated $31.5 million for other claims and equity. The only claims that we know of that were excluded from this analysis are (i) the officer and director indemnity claims relating to the Raynes litigation (ii) post-Effective Date costs of administration of the Liquidating Trust; and (iii) other rejection claims that may arise. After payment of all costs attributable to the transaction, all trade creditors and subject to other adjustments, the Liquidating Trust will have the following assets: (a) applicable insurance polices and (b) the estimated amount of $31,478,127. The Liquidating Trust assets will be more than adequate to pay all claims and enable the equity holders of the Debtors to receive more than they would in a chapter 7 liquidation.

In addition to the above, I have examined and am familiar with the outstanding debt owed by the unsecured creditors to the Debtors. Under the Evercore proposal, the Debtors will be debt-free and Evercore will contribute the amount of $40 million to the Reorganized Debtors after the closing. This amount is sufficient to cover all of the outstanding AFE's and required capital expenditures in addition to operating expenses on a go forward basis for the Debtors. Therefore, I conclude that the Plan is feasible and it is unlikely that this case would be followed with further liquidation.

I also examined alternatives to the Evercore transaction including a traditional Chapter 11 with a Debtor-in-Possession loan and a five month period to market the properties. In my opinion, such alternatives would yield less to equity than the current proposal. Due to the Debtors' liquidity crises and the risk of Davis Offshore's most valuable properties being put in non-consent status, it is my view that approval of the prepackage joint plan is the best alternative for all creditors and interest holders.

Respectfully submitted,

RHETT G. CAMPBELL
State Bar No. 03714500
Phone: 713 653 8660
Rhett.Campbell@tklaw.com
DIANA W. WOODMAN
State Bar No. 21942300
Phone: 713 951 5830
Diana.Woodman@tklaw.com
MITCHELL E. AYER
State Bar No. 01465500
Phone: 713 653 8638
Mitchell.Ayer@tklaw.com
ALLISON BYMAN
State Bar No. 24040773
Phone: 713 951 5899
Allison.Byman@tklaw.com
MATTHEW R. REED
State Bar No. 24046693
Phone: 713 653 8695
Matt.Reed@tklaw.com
THOMPSON & KNIGHT LLP
333 Clay Street, Suite 3300
Houston, Texas 77002
Phone: 713-654-8111
Fax: 713-654-1871
**Attorneys for Davis Petroleum Corp.,
Davis Offshore, L.P., and
Davis Petroleum Pipeline LLC**

**OF COUNSEL:**

SHELBY A. JORDON
**JORDAN, HYDEN, WOMBLE,
CULBRETH & HOLZER, P.C.**
500 North Shoreline Dr., Suite 900
Corpus Christi Texas, 78471
Phone: (361) 884-5678
Fax: (361) 888-5555
sjordan@mail.jhwclaw.com