# EXHIBIT 24

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN
SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE
DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND
ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY
JUDGMENT**

**From:** Davis, Gregg
**Sent:** 6/3/2005 11:56:04 PM
**To:** Canjar, George
**CC:**
**Subject:** Fw: Call/Meeting re Evercore Proposal

--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Davis, Gregg
To: Mesdag, Will
Sent: Fri Jun 03 08:39:31 2005
Subject: Re: Call/Meeting re Evercore Proposal

Will, on further thought, I think we should have the call with Dan and Jack first. This call
may take some time. Then based on what we hear, we should then set a call time with
Jefferies and Evercore. Then you and I should have a private call with Evercore (no Jack
or Dan) and develop "our" strategy and response, based on what we hear from Dan and
Jack. That way we will have a united front and be able to control the situation. We will
get some information on the call with Dan and Jack about the family's view of the deal,
the terms, and the process going forward which we should discuss privately with
Evercore. We will be able to develop "our" plan before we go into an "all hands" call.
You and I should hear directly from Evercore their views. Also, in case the family is
thinking they want the valuation to increase, versus just increase the money out by selling
more shares, we can discuss this. I want the family to understand how the value of the
deal has risks. Let's talk. Gregg
--------------------------
Sent from my BlackBerry Wireless Handheld

Redacted

Redacted

Redacted

NEWD00326879

# EXHIBIT 25

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY JUDGMENT**

**From:** Mesdag, Will
**Sent:** Friday, July 01, 2005 09:28 PM
**To:** Davis, Gregg
**Subject:** RE: DPC-Jefferies

Gregg,

Call me if you want to talk. I'm at 970 925 5944.

I am comfortable using the projections you gave to Dan as the downside case and then develop a base case and an upside case. We need to be careful that there is only one set of numbers. Dan will be uncomfortable if he has shown the family different numbers than what we show Evercore. They won't have a problem.

I would be very careful about cultivating Sankaty as a back-up. The assumption should be that Evercore will close on the terms proposed and we should not be pursuing Plan B unless it becomes clear that they will fulfill their end of the bargain. There is no reason to believe that Evercore will not do this deal.

I would not increase the size of the new equity at this point. It looks very weak. If you need new capital in the future, you can arrange a capital call.

Will

---

**From:** Davis, Gregg
**Sent:** Fri 7/1/2005 1:18 PM
**To:** Mesdag, Will
**Subject:** Re: DPC-Jefferies

Will, we need to get to work on new projections for Evercore. Obviously we don't want to mislead but the numbers we gave to the family are downside projections. Let's communicate over the weekend and discuss strategy. I spoke to Armel. He call Will Hiltz. Dan asked if we think Sankaty would be a back-up. He is worried (as he should be) that if Evercore goes away we have no alternative. And we have no bargaining strength to negotiate. We know rthis but let's talk aboiut how we best keep Evercore on the line based on our new projections. Also we need to project if $70 million is enough based on ouir new cashflow projections. Gregg

---------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Mesdag, Will <wmesdag@redmtncap.com>
To: Davis, Gregg <GDavis@davcos.com>; Canjar, George <GCanjar@davcos.com>; Voyticky, David <dvoyticky@redmtncap.com>
Sent: Fri Jul 01 14:56:42 2005
Subject: Re: DPC-Jefferies

Great news!  Now we have to count on Evercore to hold up their end of the bargain.
---------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Davis, Gregg <GJDavis@davcos.com>
To: Canjar, George <GCanjar@davcos.com>; Mesdag, Will <wmesdag@redmtncap.com>; Voyticky, David <dvoyticky@redmtncap.com>

Sent: Fri Jul 01 12:10:32 2005
Subject: DPC-Jefferies

Guys, congratulations! I just heard (very confidentially from my atty so you didn't hear this from me) that, quote from Jefferies and Armel "Gregg and his team have negotiated an 'over the top' good deal for all invoved" this was the upshot of the meeting with shareholders today. My atty tells me Dan and Jack plan to call Evercore today. Again Dan has not called me so let's act as if we don't know this. Great job team!!! "We have conquered a key bridge. We have several more before we reach the city". Thanks for all your help. Gregg

---------------------------

CONFIDENTIAL                                                                        RM00024111

Sent from my BlackBerry Wireless Handheld

CONFIDENTIAL

RM00024112

# EXHIBIT 26

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY JUDGMENT**

| | |
|---|---|
| **From:** | Mesdag, Will |
| **Sent:** | Monday, July 04, 2005 11:01 PM |
| **To:** | Davis, Gregg |
| **Subject:** | RE: Davis Petroleum |

Gregg,

Good to hear from you. Happy Fourth to you and the rest of the Davis family!

I will be returning from Aspen on Tuesday evening and I have a Board meeting here on Tuesday afternoon. I will be free all Tuesday morning and in the office on Wednesday.

I am confident that we can present three cases – downside (that Dan showed the family), base, and upside – that will help to hold the Evercore valuation in place. They realize that a move in value will upset the applecart and will be reluctant to do so. Can you ask Dee and George to start to prepare the assumptions for each case?

They will be focused on your preliminary reserve report more than 2005 cash flow. If that allows them to get to an asset value of approximately $90mm before debt, we should be OK. I also think that Clipper will be meaningful given its timing. If Clipper is a success, we should be in good shape. If Clipper is dry, we should expect some hand wringing – especially in light of the reduced production at Bellis. Let's keep our fingers crossed.

Is Dan going to handle the negotiation with Evercore?

Will

---

**From:** Davis, Gregg
**Sent:** Mon 7/4/2005 9:57 AM
**To:** Mesdag, Will
**Subject:** Davis Petroleum

Will, I'll be back in Houston Tuesday afternoon. Where will you be? I'd like to talk strategy for the next steps. One concern I have is obviously or latest cashflow projections. As you know they are conservative and we have intentially kept Bellis production low, not the most likely case, which has contributed greatly to the decrease. I want to discuss this and other elements of our operations and resultant cashflow and how we deal with Evercore. I'm concerned how they will react to this thus concerned for value and the deal. Obviously as a potential invester you are as well. I still am confident in our business, our business plan but am concerned that we are looking at a retrade of the deal or if you wil a re-valuation which translates into issues with the family. Anyway, I want to talk and get a gameplan together.

on a possitive note a lower valuation will increase the buying power of the equity investment and thus increase the percentage of ownership for the DPAC stock for management and I. Also, if its total dollars the family wants and they are viewing the common stock remaining as very risky (John's words), then they may be content with getting a little more total cash out and have less common remaining. Also we can look at ways to market and sell the remaining common. And I'm looking into ways I can do an inter-family stock deal. I will be honest and tell you I'm limited there. Anyway, let's talk tomorrow. I hope you and your family have a nice 4th. Gregg

--------------------------
Sent from my BlackBerry Wireless Handheld

CONFIDENTIAL

# EXHIBIT 27

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY JUDGMENT**

| From: | Mesdag, Will |
|---|---|
| Sent: | Saturday, August 13, 2005 07:15 AM |
| To: | Teets, Chris |
| Subject: | DPC |

Chris,

I'm glad you spoke with Gregg. This a unique opportunity to build a relationship with him. You should maximize it during the next week. Make excuses to have contact and look for opportunities to be helpful.

Does it make sense to meet with everyone in Houston next week (while I'm still away) to review the NSA report? Should you meet with Dan Armel just to introduce yourself? -- he never responded to the email I sent to him regarding David. You might both enjoy the Pasadena connection.

I'm surprised that the exclusivity agreement is not signed -- you need to talk to Ciara and to Dan to understand what the issue is. This is our business and we have a right to know and to express an opinion. You should also call Stuart and get his point of view. I would like your assessment as to whether the expense reimbursement is the only issue and whether the positions are reasonable. I don't understand why Evercore or Dan would be waiting to sign until there is a reconfirmation of price. This is a mistake on Evercore's part. In the ordinary course, we would have 60 days of exclusivity during which we would conduct good faith negotiations (including reasonable price adjustments). We are now exposed to the deal blowing up with no further exclusivity if we propose any change in price. I'm also concerned (and I've expressed this twice to Will) that a Clipper discovery and no exclusivity agreement is a bad scenario -- all bets could be off -- and DPC will have some very real financing flexibility on the back of that discovery. We should be careful not to assume that the company is as cash strapped as it appears. There are assets that can be sold and changes in strategy that can be adopted. I have seen it done many times under Marvin's direction -- and a Clipper discovery will create that situation. In my view, the exclusivity agreement should be signed immediately.

I'm not sure what you meant by Gregg's "second guessing". I have told him that his first priority is to get the deal in order to finance the business -- even if it means a price adjustment. That doesn't mean that he needs to support or facilitate a price adjustment. It's not a bad thing for Will to think that a price adjustment will result in WWIII -- I put that idea into his head. Gregg should be conceding the point and distancing himself from what the family may or may not do. It was a mistake to indicate that the family could tolerate a price adjustment. I had simply suggested that he should not put himself in the position of negotiating price on behalf of the family with Will. He should simply be an honest broker and facilitate a closing that finances the business, keeps the people, and protects value. Gregg tends to lose this point and it would be worth reiterating.

Best,

Will
--------------------------
Sent from my BlackBerry Wireless Handheld

CONFIDENTIAL

RM00014096

# EXHIBIT 28

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN
SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE
DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND
ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY
JUDGMENT**

**From:** Mesdag, Will
**Sent:** 10/25/2005 2:51:59 PM
**To:** Burnham, Ciara; sdavies@sankatyadvisors.com; Teets, Chris
**CC:** Hiltz, William; Bick, Mayer
**Subject:** Re: Davis Petroleum - Good news

You're the boss.
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Burnham, Ciara
To: Mesdag, Will ; sdavies@sankatyadvisors.com ; Teets, Chris
CC: Hiltz, William; Bick, Mayer
Sent: Tue Oct 25 07:35:41 2005
Subject: RE: Davis Petroleum - Good news

ok by me


From: Mesdag, Will [mailto:wmesdag@redmtncap.com]
Sent: Tuesday, October 25, 2005 10:18 AM
To: Burnham, Ciara; sdavies@sankatyadvisors.com; Teets, Chris
Cc: Hiltz, William; Bick, Mayer
Subject: Re: Davis Petroleum - Good news

I strongly believe that we should propose a break-up fee of $5mm.  This will not be over until it's over and we need to
establish very strong incentives to close with Evercore -- the only way will be to make it expensive to do anything else.
Jefferies will also charge a 1% fee on a deal away.  $5mm would be 3% of EV and 3% of equity including new money.
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Mesdag, Will
To: 'burnham@evercore.com' ; 'sdavies@sankatyadvisors.com' ; Teets, Chris
CC: 'hiltz@evercore.com' ; 'bick@evercore.com'
Sent: Mon Oct 24 23:49:15 2005
Subject: Re: Davis Petroleum - Good news

Congratulations.  This very good news.

Chris will cover for me over the next couple of days.  We would prioritize getting exclusivity in writing asap with a
break-up fee.  We should also establish a deadline for family members to declare whether they are sellers or not
because our structure will be dependent on the result.  We would recommend, however, going to exclusivity first and
not further complicating their decision making.

Well done, everyone.

Will
--------------------------
Sent from my BlackBerry Wireless Handheld

NEWD00161254

-----Original Message-----
From: Burnham, Ciara
To: sdavies@sankatyadvisors.com ; Mesdag, Will ; Teets, Chris
CC: Hiltz, William ; Bick, Mayer
Sent: Mon Oct 24 16:53:20 2005
Subject: Davis Petroleum - Good news

I spoke with Dan Armel tonight. We have been selected to go forward with the transaction.

I am preparing exclusivity letter with breakup fee

Also we will prepare for Dan a schedule defining our approach to the purchase price adjustments referenced in our letter.

We will coordinate a call for the group to discuss timing, process and next steps (MB - can you pls coordinate?)

_____

Ciara Burnham
Senior Managing Director
Evercore Partners
55 East 52nd Street  I  43rd Floor
New York, NY 10055
Phone  212.857.3160
Fax    212.857.3152
burnham@evercore.com

NEWD00161255

# EXHIBIT 29

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN
SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE
DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND
ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY
JUDGMENT**

**From:** Mesdag, Will
**Sent:** Tuesday, October 25, 2005 03:08 PM
**To:** Teets, Chris
**Subject:** Re: DPC

I just talked to Gregg.  I think the break-up fee should be $5mm.

------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Teets, Chris <CTeets@redmtncap.com>
To: Mesdag, Will <wmesdag@redmtncap.com>
Sent: Tue Oct 25 07:06:18 2005
Subject: DPC

Spoke with gregg and ciara. gregg is obviously pleased with the outcome. Ciara is working on the final touches of the exclusivity agreement (w/ $3mm break-up), outline of the mechanics of the purchase price adjustment and working with stuart re interim financing. I stressed to ciara the importance of putting a timeline on when the family needs to decide by.

According to dan, we were chosen based upon certainty to close as opposed to price (and the evercore/mgmt team dynamic was also a plus). Dan suggested that there will be very little roll-over equity (the only possibility he felt was Nancy).

Gregg suggested we may want to meet up in Houston sometime next week.
------------------------
Chris Teets
Red Mountain Capital Partners LLC
310-551-2238

CONFIDENTIAL

RM00024165

# EXHIBIT 30

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 31

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 32

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 33

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 34

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 35

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY JUDGMENT**

**From:** Rhett.Campbell@tklaw.com
**Sent:** 3/3/2006 1:45:56 PM
**To:** bert.conly@fticonsulting.com
**CC:** Davis, Gregg
**Subject:** Davis - Evercore

In light of the exclusivity provisions of the Evercore term sheet, which was the basis for our solicitation of votes last night, I believe we must immediately cease further discussions with petrie or anyone else.

Here is the revised term sheet.

Thanks

RGC

(See attached file: 03-02-06 Revised Evercore Term Sheet - signed by E.pdf)


Attachment: 03-02-06 Revised Evercore Term Sheet - signed by E.pdf

NEWD00389194

SUMMARY OF PROPOSED TERMS
FOR THE ACQUISITION OF EQUITY IN THE DAVIS OPERATING
COMPANIES

This Summary of Proposed Terms ("Term Sheet") is intended as a summary only and does not reference all of the terms, conditions, representations, warranties, covenants and other provisions, which will be contained in the definitive documentation for the transactions contemplated hereby. It also does not include descriptions of all of the terms, conditions, other structural elements or regulatory approvals that may be necessary or will be provided for in the definitive documentation relating to the proposed transaction. The ultimate legal structure will be determined with the advice of legal and tax counsel and the agreement of the parties hereto, and the terms contained in this Term Sheet will be modified to reflect any such revised structure and other legal and tax considerations.

Terms used herein and not otherwise defined shall have the respective meanings set forth in the draft Contribution and Sale Agreement dated as of February 13, 2006 (the "Draft CSA").

## GENERAL

Plan:
    The Board of Directors or other governing bodies of the Operating Companies will approve the reorganization of the Operating Companies pursuant to a prepackaged bankruptcy plan that is satisfactory in form and substance to the Buyers (the "Plan"), and such Board and/or governing body approvals will be the only approvals required in connection with the filing of the Plan. Among other things, the Plan shall provide for:

    a.  the satisfaction and discharge of all Claims (as defined in section 101 of the Bankruptcy Code) against the Operating Companies in exchange for (i) payment of the allowed amount of such Claims from the proceeds of the Transaction (as defined below) or (ii) such other treatment that is acceptable to the Buyer and agreed to by the Operating Companies and a holder of an allowed Claim;

    b.  the cancellation and annulment of all existing equity interests in the Operating Companies in exchange for the distribution to each holder of an allowed equity interest of its pro rata share of the Transaction proceeds remaining after payment of all allowed Claims. Proceeds of the Transaction will be paid into, and Claims and distributions to equity holders paid out of, a liquidating trust established pursuant to the Plan;

    c.  the issuance of new equity interests in the reorganized Operating Companies (collectively, "New Davis") to the Buyers;

NYI-2247890v7

d.  the assumption by the Operating Companies and assignment to New Davis of all executory contracts not expressly rejected (as may be designated by the Buyers);

e.  the payment to Buyers of a transaction fee equal to 1.5% of the Purchase Price (as defined below);

f.  the segregation and retention of not less than $10 million of the Purchase Price to secure the Operating Companies' obligation to indemnify the Buyers for any breach of a representation or warranty contained in the Final CSA (as defined below).

g.  express findings that, except to the extent expressly assumed pursuant to the Plan, New Davis, the Buyers, their affiliates and their representatives shall not be liable as a successor or otherwise for any claim or cause of action arising prior to the effective date of the Plan;

h.  an affirmative injunction against any person from pursuing in any way a claim or cause of action that arose prior to the effective date of the Plan against New Davis, the Buyers, their affiliates and their representatives;

i.  the commitment by the Buyers to provide funding of up to $40 million to New Davis which is expected, together with projected cash flows and new secured financings, to be sufficient to fund New Davis' currently projected capital expenditures through fiscal 2006 (as more particularly described on Schedule A); and

j.  usual and customary conditions to effectiveness, including but not limited to (i) payment to the Buyers of the Reimbursement Obligation (as defined below) prior to the filing of any petition for bankruptcy relief by the Operating Companies and (ii) the entry by the Bankruptcy Court, on or before March 15, 2006, of an order (the "Confirmation Order") confirming the Plan and approving the Transaction in a form that is acceptable and expressly approved by the Buyers.

Transaction:        Pursuant to the Plan, Buyers will acquire all of the issued and outstanding equity interests of New Davis on substantially the terms set forth in the Draft CSA, with such changes as are set forth herein, necessary to reflect the Plan, or agreed by the parties (the "Transaction"). Prior to the filing of the Plan, the Contribution and Sale Agreement (the "Final CSA") will be executed. There shall be usual and customary conditions to the Buyers' obligation to close the Transaction, including but not limited to the Buyers'

Confidential                                    NEWD00389196

satisfaction that the Confirmation Order is a final and non-appealable order. The Final CSA shall terminate and the Buyers shall have no further obligations of any kind if all conditions to closing are not satisfied on or before March 30, 2006.

Purchase Price:

The Purchase Price shall be equal to $150 million, subject to the closing adjustments as described herein

The Purchase Price shall be (i) adjusted upward dollar for dollar to the extent that the current assets of New Davis at Closing are greater than zero (assuming that New Davis emerges from chapter 11 with no current liabilities) and (ii) adjusted downward dollar for dollar to the extent the Operating Companies have not made or accrued (such that they constitute a Claim against the Operating Companies) any of the projected capital expenditures contained in the budgets given to Evercore on February 25 and 27, 2006, attached as Schedule A.

Expenses/Break-Up Fee:

If for any reason the Confirmation Order has not been entered on or prior to March 15, 2006 and/or the Transaction has not closed on or before March 30, 2006, then the Company shall (i) promptly reimburse Buyers and Buyers' Affiliates for their reasonable out-of-pocket third-party fees and expenses incurred in connection with Buyers' and Buyers' Affiliates consideration of and participation in the Transaction and (ii) pay to Buyers a break-up fee equal to 2.5% of the Purchase Price. In addition, in the event Sellers or their affiliates enter into an Alternative Transaction within 12 months of the earlier to occur of the failure of the entry of the Confirmation Order by March 15 or failure to close by March 30, then Sellers shall pay to Buyers an additional break-up fee of 2.5% of the Purchase Price; provided that no break-up fee shall be payable in either circumstance in the event that Buyers determine, as a consequence of its due diligence review, not to proceed with the Transaction

Exclusivity:

From the date hereof and prior to termination of Buyers' obligations under the Final CSA, the Operating Companies will not, and they will cause their the directors, officers, stockholders, employees, representatives (including, without limitation, financial advisors, attorneys and accountants) and agents not to, directly or indirectly encourage, solicit, initiate or enter into any discussions, negotiations, arrangements, understandings or agreements

NYI-2247890v7

Confidential

NEWD00389197

(whether written or oral) with, or provide any information to, any corporation, partnership, limited liability company, association, person or any other entity or group with respect to any transaction similar in purpose or effect to, that could be preclusive or that could have the effect of limiting the scope of, the Transaction (an "Alternative Transaction"); (ii) they will immediately cease and cause to be terminated any existing activities, discussions or negotiations with any parties conducted heretofore by any person with respect to any Alternative Transaction; and (iii) they will notify the Buyers immediately in writing if any inquiries or proposals (including the identity of the party making such inquiry or proposal and the terms thereof) are received by, any such information is requested from, or any such negotiations or discussions are sought to be initiated or continued with them with respect to any Alternative Transaction.

As filed with the bankruptcy court, the Plan will contemplate only the Transaction and will not contemplate any Alternative Transaction (or any process by which Alternative Transactions will be solicited or pursued).

| | |
|---|---|
| Due Diligence: | The willingness of the Buyers to enter into a final Contribution and Sale Agreement on the terms set out herein will be subject to continued due diligence review, including but not limited to a review of the Operating Companies' existing oil and gas reserves and future prospects, financial statements, environmental liabilities, accounting records, legal due diligence and continued business due diligence. Without limiting the foregoing, Buyers shall be assured as to the retention of key employees and management, that any DIP or similar financing be acceptable to Buyers, and that Sellers have not gone "non-consent" with respect to any Oil and Gas Lease or lost any other material benefit or right with respect to any Oil and Gas Property. |
| Confidentiality: | Prior to solicitation of consents for the Plan, neither the existence or contents of this Term Sheet may be disclosed to any person other than the Operating Companies representatives, who shall be directed by the Operating Companies as to the strictly confidential nature hereof. This proposal will expire at Buyers' option if the Operating Companies or any of their Affiliates or representatives discloses the existence or contents of this Term Sheet to |

NYI-2247890v7

NEWD00389198

any third party in violation of this Term Sheet without Buyers' prior written consent.

**Public Relations:** The Operating Companies shall coordinate with Buyers with respect to all media releases or other communications with the public and shall not disclose or describe the Transaction or the Plan in any manner not previously approved by Buyers.

**Expense Reimbursement:** As soon as practicable and prior to any chapter 11 filing, the Operating Companies shall pay to the Buyers $1.5 million in satisfaction of their existing obligation to reimburse the Buyers for expenses related to the preparation and negotiation of the Draft CSA, together with related due diligence and other investigation expenses (the "Reimbursement Obligation").

**Nature of Proposal:** The Proposal set forth in this Term Sheet is subject to the satisfaction of the various conditions set forth above and execution of a mutually acceptable Final CSA.

For the Buyers:

DAVIS PETROLEUM INVESTMENT LLC
By: EVERCORE CAPITAL PARTNERS II, LP, its managing member

By: Evercore Partners II L.L.C., its general partner

By: William O. Hiltz
Authorized Signatory

RMCP PIV DPC, L.P.
By: RMCP DPC LLC, its general partner
By: Red Mountain Capital Partners LLC, its managing member
By: Red Mountain Capital Management, Inc., its managing member

By:
Name: Willem Mesdag
Title: President

SANKATY DAVIS, LLC
By:
Name: Stuart Davies
Title: Vice President

Confidential

For the Operating Companies:

Davis Petroleum Corp.
By: _____
Name: _____
Title: _____

Davis Offshore L.P.
By: _____
Name: _____
Title: _____

Davis Petroleum Pipeline LLC
By: _____
Name: _____
Title: _____

Confidential

NEWD00389200

# EXHIBIT 36

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN
SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE
DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND
ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY
JUDGMENT**

**From:**    Mesdag, Will
**Sent:**    Saturday, December 03, 2005 10:17 PM
**To:**      hiltz@evercore.com; burnham@evercore.com
**Cc:**      Teets, Chris
**Subject:**  DPC

Will and Ciara,

Chris posted me on his conversation with Ciara regarding a potential price adjustment and your proposal for a director/consultant. Gregg also contacted me today regarding conversations he has had with Dan, the meetings he has had with Jim Montag and your potential co-investors and his CFO search. I will be in New York on Monday and would like very much to meet with you to discuss these points.

Dan is currently in the process of sounding some alarm bells in the family regarding a potential price adjustment in order to condition them to that possibility. I would advocate that we have no "conditioning" discussions with Dan until we are prepared to close the deal. These early conversations have the potential to do more harm than good. I would not underestimate Dan's and the family's potential to react emotionally and negatively and to start to think about and possibly explore other alternatives to the extent that we deviate from our exclusivity agreement. Our best tack will be to frame any adjustments we may seek as balance sheet related (which should include working capital adjustments) and consistent with our agreement. If we talk about value degradation since October, they will aggressively argue the contrary (they feel passionately that, with Bellis and Lorien on track to produce large volumes in 2006 and with the Clipper discovery, we have a very good deal). They are less cash flow constrained than they thought they would be and could probably stitch a deal together with Constellation pretty quickly that would satisfy BofA. We could find ourselves in a place we don't want to be -- reopening a value discussion and losing their disincentive of the break-up fee to pursue other parties.

Gregg will communicate his thoughts directly to you, but he is concerned about Jim Montag and thinks we should be able to do better. I don't have a point of view and don't know how substantial IP's oil and gas operations were and how long ago they sold them. Have you considered a broader range of candidates? And are you interested in Sankaty's and our points of view? If you are interested in retired oil & gas executives, there are a lot of them around. Chris tells me that you also plan to have Jim act as a consultant to DPC. I would like to understand what value he would add -- the G&A is bloated as it is. I would also worry in general about having a non-management board member acting in a non-board capacity. It could get very messy in terms of governance.

Regarding the CFO search, I understand that your recommended candidate does not want to proceed. I encouraged Gregg to talk to you about initiating a search (for which he had previously laid the groundwork). We feel strongly that we need a first class CFO in place soon after we close and would like to be confident that all options have been explored.

Gregg indicated that your co-investors don't appear to be LP's in your fund -- which is different from what I had understood. If that's not the case, we (and Sankaty) would very much appreciate it if we would keep this investment among the three of us given the work we have put into it and the partnership we expect to develop in the years to come. As I indicated before, RMCP is prepared to take a larger commitment now that we have put our fund together -- we would be happy to absorb some of Evercore's commitment to the extent that it exceeds your fund's capacity.

These are all important items and would benefit from a face to face discussion. Please let me know if you are available to meet sometime on Monday.

Best,

Will
---------------------------
Sent from my BlackBerry Wireless Handheld

CONFIDENTIAL

# EXHIBIT 37

**ANNEXED TO THE DECLARATION OF HOWARD J. STEINBERG IN
SUPPORT OF OPPOSITION OF PLAINTIFF THE NANCY SUE
DAVIS TRUST TO MOTIONS OF NEW DAVIS DEFENDANTS AND
ALBERT S. CONLY, LIQUIDATING TRUSTEE, FOR SUMMARY
JUDGMENT**

| | |
|---|---|
| **From:** | Mesdag, Will |
| **Sent:** | Friday, December 30, 2005 03:51 PM |
| **To:** | Teets, Chris; Bunting, Eric; Sires, Sean F. |
| **Subject:** | Re: Davis letter |

As far as I know, the only alternative that is being considered is some backstop primary equity infusion in the event this deal busts. But it is conceptual at best. I have emphasized to Ciara that the company is not without alternatives given its assets and Evercore should not assume that it has the company in a corner. I am 100% confident that the family would have rejected a joint and several unlimited liability without regard to the consequences to the company. An asset sale would solve their liquidity issues relatively quickly.
-------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Teets, Chris <CTeets@redmtncap.com>
To: Mesdag, Will <wmesdag@redmtncap.com>; Bunting, Eric <ebunting@redmtncap.com>; Sires, Sean F. <ssires@redmtncap.com>
Sent: Fri Dec 30 07:11:44 2005
Subject: RE: Davis letter

Will:

The structure is straight forward and very constructive; however, I am glad you suggested to Ciara to make sure Dan is not offended by the tone, it was a bit aggressive.

I assume Evercore is still assuming a $90/30mm split for the first tranche.

Any details on these "alternative transactions"?

Chris

---

From: Mesdag, Will
Sent: Fri 12/30/2005 12:11 AM
To: Teets, Chris; Bunting, Eric; Sires, Sean F.
Subject: FW: Davis letter


FYI

---

From: Bick, Mayer [mailto:bick@evercore.com]
Sent: Thu 12/29/2005 8:54 PM
To: Davis, Gregg; Mesdag, Will; Teets, Chris; sdavies@sankatyadvisors.com; armeld@aol.com; jhardy@omm.com
Cc: Beutner, Austin; Burnham, Ciara; Hiltz, William; jaschlegel@jonesday.com; markmetts@jonesday.com
Subject: Davis letter

Please see the attached Davis letter. An executed version was sent to Dan Armel and Jack Hardy this afternoon.

happy new year,
Mayer

CONFIDENTIAL

RM00006214

# EXHIBIT 38

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 39

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 40

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 41

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 42

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 43

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 44

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**

# EXHIBIT 45

**INTENTIONALLY REMOVED AS HIGHLY CONFIDENTIAL.**

**TO BE FILED UNDER SEAL**